THE PEOPLE v. CHARLES WATSON AND HENRY RICE.

*Criminal law—Lottery—Conspiracy to obtain money by false pretenses—Common-law offenses.*

1. There is no law of this State which prohibits or punishes a person from receiving a prize drawn in a lottery, if it is voluntarily paid to him.

2. Public policy requires that courts should lend active aid in punishing persons who conspire to obtain money or any other valuable thing by means of false pretenses, with intent to cheat or defraud, and in no case should crime be effectually interposed as a shield for crime.

3. A respondent convicted of conspiring to obtain the money of another by means of false pretenses may be sentenced under How. Stat. § 9434, which provides a punishment for the commission of offenses indictable at the common law for the punishment of which no provision is expressly made by any statute of this State.[1]

4. Conspiracy to do an unlawful act was an indictable offense at the common law, and there never was any distinction between conspiracy to commit an act which was unlawful at the common law or one declared to be unlawful by statute, the *conspiracy* being the *gist* of the crime.

Error to recorder's court of the city of Detroit. (Swift, J.) Argued June 20, 1889. Decided June 28, 1889.

Information for conspiracy to obtain money by means of false pretenses. Respondents were convicted and sentenced

---

[1] See *Ware v. Branch Circuit Judge*, *ante*, 488.

to imprisonment in the Detroit House of Correction for two years. Judgment affirmed. The facts are stated in the opinion.

*John G. Hawley,* for respondents.

*James V. D. Willcox,* prosecuting attorney, for the People.

CHAMPLIN, J. The respondents were charged with the offense of conspiring to obtain the money of Francis Martin by means of false pretenses.

Capt. Francis Martin was in the eighty-ninth year of his age, and had lived in Detroit about 25 years.

Between 12 and 1 o'clock of the seventh day of December, 1888, he met the defendant Rice at the junction of Washington and Michigan avenues, in Detroit. They entered into conversation. Rice claimed to have just returned from a trip to California, where he had spent the fall and summer with a brother, and was to return there in a few days. This led Capt. Martin to say that he had some acquaintance in California, and asked him if he had been at Los Angeles county, and he said he had. The captain then told him he was in correspondence with a gentleman there whom he named, and Rice told him he knew the gentleman perfectly, and when he went back would inform him of the fact that he had met the captain. Rice then told him that his name was James McMillan, a son of an eminent citizen of that name; and after some further conversation Rice invited him to go to a house with him on Wayne street, where he had some books, and he would like to present the captain with a copy.

They went, and Rice conducted him into a room, and asked Watson if he had received the books. Watson said the books had been received, but they were in a damaged condition, and he sent them back to Chicago to be replaced by perfect copies, and they would be back in a few days. He said he had a history of Michigan written by Bancroft, and

asked the captain if he would take a copy, and the captain said he certainly would take it. Rice then produced a ticket to the lottery, and handed it to Watson, and asked him what the result of the scheme was, and Watson said he had drawn $50, and paid over $50 in $10 bills. He then took two tickets, and presented one to the captain as a friend of his. He spread them out upon the table, and passed the captain a pack of cards. The combination numbers were 27, and he drew $10,000. Watson then produced packages which had the appearance of money in bills. The upper bill was of the denomination of $50. Watson said they had fairly won the money, but that he was under heavy bonds to his principal in Chicago for $20,000 not to have anything to do with any person other than those who were respectable and responsible, and he said they must first produce $3,000 to show their responsibility and prove their respectability. The captain told him he could not command $3,000 in so short a time,—in the time he gave him to do it,—but that he would get $1,000. Rice said he would go to his father, Mr. McMillan, and get $5,000, and he would loan Capt. Martin $2,000 to produce to Watson, and that with his $1,000 would make the $3,000, and then they could draw the money.

Martin then started for the bank where his money was deposited. Rice accompanied him to the corner of Shelby street and Lafayette avenue, where they agreed to meet in a few minutes, as soon as Rice got his money. Martin went to the bank and asked the proprietor for a thousand dollars which he had on deposit there. Wiser counsels prevailed, and the banker refused to give it to him. He became aware that an attempt was being made to swindle him. It appears that detectives were called in.

Capt. Martin then returned to the corner of Shelby street and Lafayette avenue to meet Rice. He was not there, and did not come. The captain then went to the room on Wayne street, and neither of them were there. Defendants were

arrested within a couple of hours with the packages and tickets upon their persons. The packages marked $5,000 each were examined, and one contained only $95 and the other $48. Capt. Martin fully identified the packages and tickets. Watson had rented the room, which was a front parlor on the first floor, the day before of Sarah Kirby for two days to write insurance in. Other testimony was introduced.

At the close of the testimony respondents' counsel filed 30 written requests to the court to charge, which were all given in the language of the counsel, except the following, which he declined to give:

"14. It must be in a transaction in which the party defrauded would have the right to engage, if the pretense made to him were true in fact.

"15. The design of the law is to protect those who, for legal purposes, are induced by false and fraudulent representations to give credit or part with their property to another, and not to protect those who, for unworthy or illegal purposes, part with their money.

"16. All gambling, whether by lottery ticket, in money, or any method of money prizes, is unlawful in the State of Michigan."

"30. In this case there is no evidence that tends to show what the respondents intended to do when the prosecutor should exhibit his money, and the jury should render a verdict of not guilty."

The argument of respondents' counsel is that the evidence shows that the complaining witness in the transaction in which it is alleged it was attempted to defraud him was himself engaged in an illegal transaction by attempting to obtain $5,000, which he supposed he had won by lottery gambling. Hence the public are not interested, and he has no right to appeal to the criminal law for protection, and courts will not interfere to protect those who, for unworthy or illegal purposes, part with their money.

To adopt this position would give free license to villains and sharpers to prey upon those who have become credulous through the infirmities of age, or who are unwary from the

inexperience of youth, as well as a large class who are weak-minded by nature,—the very classes of the community whom it is the policy of the law to protect. Besides, the evidence does not disclose that Capt. Martin was engaged in violating the criminal laws of this State. There is no law of this State which prohibits or punishes a person from receiving a prize drawn in a lottery, if it is voluntarily paid to him. He purchased no ticket, and was not engaged in promoting a lottery scheme.

We have no hesitation in saying that public policy requires that courts should lend active aid in punishing persons who conspire to obtain money or other valuable thing by means of false pretenses, with intent to cheat or defraud, and in no case should crime be effectually interposed as a shield for crime.

We have no doubt whatever that there was sufficient evidence in the case to warrant the verdict of the jury.

It is urged that the sentence imposed is not warranted by the statute. It is claimed that section 9261, How. Stat., covers the offense charged, and that the sentence should not have exceeded imprisonment in the county jail one year, or a fine not exceeding $250, or both such fine and imprisonment.

The court regarded the offense as being governed by section 9434, How. Stat., which provides for the punishment of those—

"Who shall commit any indictable offense at the common law for the punishment of which no provision is expressly made by any statute of this State."

The court was clearly right. Conspiracy to do an unlawful act was an indictable offense at the common law, and there never was any distinction between conspiracy to commit an act which was unlawful at the common law or which is declared to be unlawful by statute. Conspiracy is the gist of the crime.

The judgment must be affirmed.

The other Justices concurred.