PEOPLE *v.* FIELDS.

1. Conspiracy—Common Law.
   Conspiracy to do an unlawful act was an indictable offense at the common law.

2. Same—Common Law—Statutes.
   Since conspiracy is the gist of the crime of conspiracy to do an unlawful act no distinction is made between conspiracy to commit an act which was unlawful at the common law or which is declared to be unlawful by statute (Act No. 328, § 505, Pub. Acts 1931).

3. Same—Circumstantial Evidence.
   Evidence in prosecution for conspiracy to defraud, though circumstantial, *held,* sufficient to sustain conviction by court in trial wherein jury was waived.

4. Same—Evidence.
   A conspiracy may be established by circumstantial evidence or by evidence both direct and circumstantial as circumstantial evidence is recognized as proper, although not always satisfactory, ·evidence.

5. Same—Innocent Persons.
   An information or indictment for conspiracy will lie notwithstanding conspiracy was not directed against an innocent person.

6. Indictment and Information—Conspiracy.
   Information for crime of conspiring to defraud need not contain the word ''feloniously'' (3 Comp. Laws 1929, § 17273; Act No. 328, § 505, Pub. Acts 1931).

7. Conspiracy—Common Law—Statutes—Information.
   An information charging conspiracy to defraud charges a conspiracy to commit an indictable offense at the common law, now punishable as a felony, and is, therefore, good under the statute (3 Comp. Laws 1929, §§ 17216, 17273, Act No. 328, § 505, Pub. Acts 1931).

Appeal from Genesee; Gadola (Paul V.), J.   Submitted January 12, 1939.   (Docket No. 97, Calendar No. 40,258.)   Decided March 9, 1939.

Robert Fields and George Ray Sands were convicted of conspiring to defraud.   Defendants appeal.   Affirmed.

*Glocheski & Glocheski,* for defendants.

BUSHNELL, J.   Defendants waived trial by jury and were convicted of the crime of conspiring to defraud Felix Lipcinski.   The story disclosed by the record is old, but always new to some, as it was apparently to Mr. Lipcinski.   Other versions of the same general scheme to defraud may be found detailed in *People* v. *Shaw,* 57 Mich. 403 (58 Am. Rep. 372), and *People* v. *Watson,* 75 Mich. 582.   See also a compilation of like cases in 95 A. L. R. p. 1249 *et seq.*

Lipcinski owned a summer resort near Bitely, Michigan.   On Friday, during the week before the opening of the deer season in 1937, a man then described as Armon visited Lipcinski's place and said he understood that the resort was for sale.   Lipcinski indicated his willingness to sell for $15,000, and was informed by Armon that he was inquiring for a man by the name of Brooks.   The following Sunday, Armon and Brooks saw Lipcinski, and the next day Armon telephoned and arranged for a meeting at Newaygo.   Later, Lipcinski and his wife went to Newaygo and agreed to meet Armon in Grand Rapids the following morning.   At Grand Rapids they were informed by Armon that Brooks was unable to be present and he wanted them to meet him at Flint.   Armon and the Lipcinskis went to Flint, met Brooks at the hotel and, according to

Lipcinski, nearly closed the deal, but Brooks wanted until 3:30 to see another party., In the meanwhile, Brooks and Armon and the Lipcinskis had lunch together. About halfway through the meal, Armon apologized to Mrs. Lipcinski for stepping on her toes; she replied that nothing had touched her toes. As they were getting up, Armon looked under the table and picked up a bill fold containing $45, the card of a man named LeRoy, and a letter concerning race horses. Mrs. Lipcinski suggested finding the owner, and Armon said: "If we don't find the owner we will split it three ways." They then called on LeRoy at his room in the hotel. He was most grateful for the return of his bill fold and money, and he insisted upon paying Armon $25 as a reward. Further conversation led to the suggestion by Armon that LeRoy bet the $25 on a horse race. After more talk, LeRoy left the parties in his room, returned in about 15 minutes, and said: "You people are honest"— "I am in touch with people"—"I have won a little money"—and he handed Lipcinski $500, suggesting that it be placed on the horses. Lipcinski replied: "No, I don't know anything about horses, I ain't used to it, give it to Armon." Armon then went out of the room and returned later with $1,300. LeRoy then suggested that he had been thinking of something but he did not know whether it would work, and a conversation ensued about betting the $1,300 on another race. Armon signed a draft for $50,000, left the room and returned sometime later with a man described as a "cashier." The cashier had a large bill fold, which Lipcinski said looked like an accordion, from which he took bundles of money and which he spread on the bed. He refused to pay over the winnings (which was this money) unless $50,000 in cash was produced as an evidence that the draft

was good. Armon and LeRoy said they could raise $35,000 between them and Lipcinski was to go to Grand Rapids to get $15,000.

About this time the authorities got some information about the affair, intercepted a telephone call, and kept an appointment for Lipcinski at Mt. Clemens, where they arrested Armon and LeRoy and a man designated as McPherson. Armon, when arrested, had with him a large envelope in the inside of his shirt containing a package of cut telephone directory pages, with currency on the outside of the package. Armon gave his name as Robert Fields and LeRoy gave his name as George Sands. When searched, Fields said, ''What are you looking for, I am not a gun man, I am a con man.''

McPherson was released because of faulty identification and Fields and Sands were informed against for conspiracy to defraud. After conviction, they were sentenced by the trial judge to be imprisoned for $4\frac{1}{2}$ to 5 years with recommendation of 5 years.

''Conspiracy to do an unlawful act was an indictable offense at the common law, and there never was any distinction between conspiracy to commit an act which was unlawful at the common law or which is declared to be unlawful by statute. Conspiracy is the gist of the crime.'' *People* v. *Watson, supra.*

The statute, Act No. 328, § 505, Pub. Acts 1931, (Stat. Ann. § 28.773) provides:

''Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this State, shall be guilty of a felony, punishable by imprisonment in the State prison not more than five years or by a fine of not more than two thousand five hundred dollars.''

The evidence presented was circumstantial but such evidence is sufficient. *In People* v. *Tenerowicz,* 266 Mich. 276, the court said at page 295:

"A conspiracy may be established by circumstantial evidence or by evidence both direct and circumstantial. Circumstantial evidence is recognized in the law as proper evidence, but it may not always be satisfactory evidence."

There is sufficient testimony to indicate that the three men acted in concert. It is unreasonable to believe that facts which fitted together so nicely could occur by accident.

The argument that no indictment will lie unless the conspiracy is directed against an innocent person is answered by *People* v. *Watson, supra,* where the court said:

"To adopt this position would give free license to villains and sharpers to prey upon those who have become credulous through the infirmities of age, or who are unwary from the inexperience of youth, as well as a large class who are weak-minded by nature,—the very classes of the community whom it is the policy of the law to protect. * * *

"We have no hesitation in saying that public policy requires that courts should lend active aid in punishing persons who conspire to obtain money or other valuable thing by means of false pretenses, with intent to cheat or defraud, and in no case should crime be effectually interposed as a shield for crime."

It is not necessary that the information contain the word "feloniously." 3 Comp. Laws 1929, § 17273 (Stat. Ann. § 28.999).

The information alleged facts sufficient to sustain a charge of conspiracy to defraud. *People* v. *Tenerowicz, supra.*

"All provisions of the law applying to prosecutions upon indictments, to writs and process therein and the issuing and service thereof, to commitments, bail, motions, pleadings, trials, appeals, and punishments, or the execution of any sentence, and to all other proceedings in cases of indictments whether in the court of original or appellate jurisdiction, shall, in the same manner and to the same extent as near as may be, be applied to informations and all prosecutions and proceedings thereon." 3 Comp. Laws 1929, § 17216 (Stat. Ann. § 28.942).

Defendants argue that the legislature did not intend to make every offense a felony which might be tried under an indictment at common law, citing *People* v. *Calvin,* 60 Mich. 113, 120; How. Stat. § 9434; 3 Comp. Laws 1915, § 15622. The statute then in force made offenses indictable at the common law punishable as misdemeanors. This statute has since been changed by the legislature to the form herein quoted, *supra.* See, also, 3 Comp. Laws 1929, § 17343.

For a historical discussion of common-law crimes in this State, see the opinion written by Chief Justice Campbell, *In the Matter of Lamphere,* 61 Mich. 105.

The information before us charges a conspiracy to commit an indictable offense at the common law which is now punishable as a felony and is, therefore, good under the statute, *supra. People* v. *Chambers,* 279 Mich. 73.

The judgment is affirmed.

Butzel, C. J., and Wiest, Sharpe, Potter, Chandler, and McAllister, JJ., concurred. North, J., took no part in this decision.