PEOPLE v. SMITH.

1. CONSPIRACY—SUFFICIENCY OF INFORMATION—STATUTES.

An information, charging that defendants conspired to obtain the sum of $250 by means of false pretenses by representing that they could furnish purchaser with $1,000 in counterfeit United· States currency but in fact intended to furnish a quantity of worthless and bogus stage paper to represent money, alleged an offense cognizable under the law of Michigan (Act No. 328, §§ 218, 505, Pub. Acts 1931).

2. CRIMINAL LAW—COMMON LAW—CONSPIRACY—STATUTES.

A conspiracy to commit a crime was an indictable offense at common law and, under statute making the commission of an indictable offense at common law a felony, such a conspiracy is a felony (Act No. 328, § 505, Pub. Acts 1931).

3. CONSPIRACY—COMMON LAW—STATUTES.

The common law condemned a conspiracy directed toward illegal ends, whether the object of the agreement was to violate the common law or the statute law.

4. SAME—GIST OF OFFENSE.

The gist of the offense of conspiracy is the agreement to accomplish a violation of law.

5. CRIMINAL LAW—SAVING QUESTION FOR REVIEW—FAILURE TO OBJECT.

Conviction of conspiracy to obtain money by means of false pretenses will not be reversed because information charging previous convictions was read to the jury where defendants did not make timely objection to the form of the information and its reading (3 Comp. Laws 1929, § 17290).

6. SAME—ENTRAPMENT—CONSPIRACY.

Conviction of conspiracy to obtain money by means of false pretenses will not be set aside because of entrapment by the police where evidence warranted jury in finding that the conspiracy was completed by the parties themselves before the local law-enforcing authorities came into the picture and furnished their informer with a roll of stage money (Act No. 328, §§ 218, 505, Pub. Acts 1931).

7. SAME—ENTRAPMENT.
   It is only active measures of persuasion that may stamp a crime as the product of entrapment.

8. SAME—ENTRAPMENT—INTENT.
   Where criminal intent originates in the mind of the defendant, the fact that officers of the government used decoys or truthful statements to furnish opportunity for, or to aid the accused in, the commission of a crime in order successfully to prosecute him therefor does not establish basis for defense of entrapment.

9. SAME—CONSPIRACY—EVIDENCE—QUESTION FOR JURY.
   In prosecution for conspiracy to obtain money by means of false pretenses, no error was committed in admitting in evidence the envelope in which one of the defendants had stage money which was to have been sold as counterfeit United States currency where witness for the people testified that it was the envelope in which one of the defendants had the stage money as the question of authenticity of the envelope was one of fact for the jury (Act No. 328, §§ 218, 505, Pub. Acts 1931).

10. SAME—INSTRUCTIONS—THEORY OF CASE—CREDIBILITY.
    In prosecution for conspiracy to obtain money by means of false pretenses, court's instruction outlining theory of defendants that they went through the acts of the proposed conspiracy in order to prove that someone was acting as an informer as well as the theory upon which the people based their case but expressing no opinion on credibility was not erroneous as an invasion by the court of the province of the jury (Act No. 328, §§ 218, 505, Pub. Acts 1931).

11. CONSPIRACY—EVIDENCE—FALSE PRETENSES.
    Evidence in prosecution for conspiracy to obtain money by means of false pretenses by representing that defendants could furnish informer with counterfeit United States currency, when in fact they intended to furnish worthless and bogus stage paper, *held,* sufficient to sustain convictions of defendants (Act No. 328, §§ 218, 505, Pub. Acts 1931).

12. CRIMINAL LAW—CONSPIRACY—JURY.
    As triers of the facts it is the jury's function in prosecution for conspiracy to defraud by means of false pretenses to weigh the testimony on each side and determine whose theory of the case to believe.

13. SAME—DEFENDANTS' FAILURE TO TAKE WITNESS STAND.
    Defendants in prosecution for conspiracy to defraud by means of false pretenses exercised their legal rights in not testifying.

Appeal from Genesee; Black (Edward D.), J. Submitted November 13, 1940. (Docket No. 139, Calendar No. 40,867.) Decided January 6, 1941.

* Lyle Smith and Dewey Arnold were convicted of conspiracy to defraud by means of false pretenses. Affirmed.

*Thomas Read,* Attorney General, *Edmund E. Shepherd,* Assistant Attorney General, *John L. Roach,* Prosecuting Attorney, and *Chester R. Schwesinger,* Assistant Prosecuting Attorney, for the people.

*Lyle Smith* and *Dewey Arnold, in pro per.*

BUTZEL, J. We granted a delayed appeal to Dewey Arnold and Lyle Smith to review their convictions for the offense of conspiracy to defraud by means of false pretenses. The information charged that Arnold, Smith and other named defendants conspired to obtain the sum of $250 from one Gilbert Scott by means of false pretenses, by representing that they could furnish him with $1,000 in counterfeit United States currency, but in fact they intended to furnish "a quantity of worthless and bogus stage paper to represent money." The information also alleged previous convictions for felonies, charging Arnold as a third offender and Smith as a second offender. See 3 Comp. Laws 1929, §. 17338 *et seq.* (Stat. Ann. § 28.1082). They were tried by jury and convicted. They were sentenced as second and third offenders.

The proofs tended to show that one Stanley Bourcier, a codefendant, met one Glenn Rohrer at a restaurant in Flint and told him where counterfeit money could be purchased. Rohrer did not care

to enter into any transaction, but he told Bourcier that he knew another person who might be interested. Thereafter, Gilbert Scott was introduced to Bourcier, and on the former's manifestation of interest, arrangements were made to consummate the transaction. At this point Rohrer and Scott secretly informed the police, who supplied Scott with a roll of stage money with a one-dollar bill on the outside and another on the inside to suggest the appearance of a large number of bills. Scott had been shown samples of the supposed spurious bills, which were in fact genuine $10 bills, placed inside a magazine. Arnold, however, had stage money in his pocket at the time the transaction was about to be closed. Smith negotiated the sale of the counterfeit money. When the parties met to complete the transaction, all were arrested.

Defendants raise several questions in this appeal. They claim that there is no such crime as conspiracy to obtain money by false pretenses, that prejudicial error was committed in permitting the prosecuting attorney to read to the jury the allegations of prior convictions in the information, that defendants were entrapped in committing the acts, that it was improper to admit in evidence an envelope which bore no marks of identification as the envelope which Scott testified Arnold showed him in furtherance of the conspiracy, that the trial court gave erroneous instructions to the jury, and that the verdict was against the great weight of the evidence.

The information alleged an offense cognizable under the law of Michigan. Section 218 of the penal code, Act No. 328, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115-218, Stat. Ann. § 28.415), declares that "Any person who, with intent to defraud or cheat, shall designedly, by color of false token or writing * * * or other written, printed or engraved

instrument * * * or by any other false pretense * * * obtain from any person any money" shall be guilty of a felony or misdemeanor, depending on the amount involved. Section 505, Act No. 328, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115-505, Stat. Ann. § 28.773), declares that "Any person who shall commit any indictable offense at the common law * * * shall·be guilty of a felony." This section refers us to the common law for the gist of the offense. A conspiracy to commit a crime was an indictable offense at common law, and such conduct is made a felony by this section of the statute. *People* v. *Watson,* 75 Mich. 582; *People* v. *Chambers,* 279 Mich. 73; *People* v. *Fields,* 288 Mich. 166. The common law condemned a conspiracy directed toward illegal ends, whether the object of the agreement was to violate the common law or the statute law. *People* v. *Watson, supra; People* v. *Fields, supra.* The gist of the offense is the agreement to accomplish a violation of law and that is what the information charged.

We acknowledge some justification for the claim that reading to the jury the allegations of the information. charging previous convictions might poison the minds of the jury at the outset of the trial. Its effect in swinging the balance toward conviction where the evidence on the merits of the new crime is weak or doubtful cannot be overlooked. Where the previous conduct has no circumstantial bearing on the crime charged, one may question whether the practice of alleging the previous convictions in the same indictment as is permitted by statute (3 Comp. Laws 1929, § 17338 *et seq.* [Stat. Ann. § 28.1082 *et seq.*]) conforms to the standard of fair play required by the due process clause of the Fourteenth Amendment to the Constitution of the United States or the comparable provision of the

Constitution of the State of Michigan (Art. 2, § 16). The attorney general concedes that the method may be subject to criticism, and states in his brief that he, the warden of the southern prison, and the crime commission are pledged to sponsor a bill before the next legislature to correct some of the "apparent injustices" of the procedure. The practice has been condoned in previous decisions of this court: *People v. Campbell,* 173 Mich. 381; *People v. Roth,* 228 Mich. 447; *People v. McDonald,* 233 Mich. 98; *In re Brazel,* 293 Mich. 632; *People v. Neaton,* 294 Mich. 134. A complete discussion of the law in other jurisdictions may be found in *People v. Gowasky,* 244 N. Y. 451 (155 N. E. 737, 58 A. L. R. 9), and the annotation at 58 A. L. R. 20, "Constitutionality and construction of statute enhancing penalty for second or subsequent offense." A leading case is *People v. Sickles,* 156 N. Y. 541 (51 N. E. 288), discussed in *People v. McDonald, supra.* Even if our disapproval of the method were to lead to a conclusion that constitutional safeguards were denied, 3 Comp. Laws 1929, § 17290 (Stat. Ann. § 28.1016), precludes reversal of the judgment because of the failure to make timely objection to the form of the indictment and its reading:

"No indictment shall be quashed, set aside, or dismissed * * * nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment, unless the objection to such indictment, specifically stating the defect claimed, be made prior to the commencement of the trial or at such time thereafter as the court shall in its discretion permit."

See, also, *People v. Cleveland,* 295 Mich. 139.

There is no merit in the claim that the conviction must be set aside because entrapment by the police stripped the transaction of criminality. The

evidence warranted the jury in finding that the conspiracy was completed by the parties themselves before the local law enforcing authorities came into the picture. Although at an early day exposing persons to temptation to commit crime was looked upon as a "diabolical business," it is only "active measures" (CAMPBELL, J., in *People v. McCord,* 76 Mich. 200) of persuasion that may stamp the crime as the product of entrapment. The rule was well stated by Circuit Judge Sanborn in *Butts* v. *United States* (C. C. A.), 273 Fed. 35 (18 A. L. R. 143):

"Where the criminal intent originates in the mind of the defendant, the fact that the officers of the government used decoys or truthful statements to furnish opportunity for or to aid the accused in the commission of a crime, in order successfully to prosecute him therefor, constitutes no defense to such a prosecution."

See, also, *People* v. *Christiansen,* 220 Mich. 506; *People* v. *Murn,* 220 Mich. 555; *People* v. *England,* 221 .Mich. 607; *Billingsley* v. *United States* (C. C. A.), 274 Fed. 86, certiorari denied, 257 U. S. 656 (42 Sup. Ct. 168, 66 L. Ed. 420); *Robinson* v. *United States* (C. C. A.), 32 Fed. (2d) 505 (66 A. L. R. 468), and annotations, "Entrapment to commit crime with view to prosecution therefor," 18 A. L. R. 146; 66 A. L. R. 478, 86 A. L. R. 263. Defendants were not inspired into crime by the police authorities; they merely furnished opportunity or aid in furtherance of an already completed conspiracy in order to acquire evidence of the consummated crime.

There was no error in admitting in evidence the envelope in which defendant Arnold had his "stage money" merely because it had no tokens of identity. The complaining witness Scott testified that it was

the envelope which defendant Smith delivered to
Arnold, whom Bourcier had described as "selling
this counterfeit money in Pontiac." Its authenticity
as the original or a fabrication was a question of
fact for the jury. The trial court properly per-
mitted its introduction for whatever worth it might
have.

Objection is made to the following portion of the
trial court's charge to the jury:

"In this case two of the respondents have taken
the witness stand and their testimony is sufficient to
convict the whole four if you believe it to be
true. * * *

"So you, if you believe the testimony of the re-
spondents themselves, they have convicted them-
selves, except that they have said it was for the
purpose of catching a stool pigeon, what they call a
stool pigeon, or a man who is trying to ferret out
crime, but if you believe the testimony as given be-
fore the jury, and in the prosecutor's office, given by
Mr. Straley, they committed all of the elements that
go into the making of the,—it is not necessary in
a conspiracy case that the man from whom they
tried to take money, or property, should lose any-
thing by it. The law of conspiracy is the forming of
the intent to defraud. That is what conspiracy is,
the performing of an unlawful act. So I say to you,
the testimony of the two men, if you believe their
testimony, they have connected all four together
with the exception, as I said, they wanted to claim it
was trying to catch a stool pigeon. * * *

"Now, if you believe from the testimony of these
two men, believe it is true, with the exception of the
fact they were trying to find out who the stool pigeon
was, they have convicted the whole four, if you be-
lieve their testimony, because they have said to you
they were together in this transaction, not at one
time, the whole of them, but they were collected to-
gether, Mr. Bushey, Doc, Arnold, Smith, who first

furnished the money, he was down there also in the hotel, and Dewey Arnold, by themselves they have connected these four people as the ones that were together, if you believe they were trying to dispose of this money, or get some money for nothing, if you find they were trying to get that man's money.''

It is said that the comments of the court invaded the province of the jury. The trial court merely outlined the theory of the case, explaining defendants' claim that they went through the acts of the proposed conspiracy in order to prove that some one was acting as a ''stool pigeon,'' as well as the theory upon which the people based their case. He expressed no opinion on credibility, but left that up to the jury. Considering the charge as a whole, there was no error.

We have examined the record with care, and conclude that there is ample evidence to support the verdict of the jury. As triers of the facts it was their function to weigh the testimony on each side and determine whose theory of the case to believe. Appellants exercised their legal rights in not testifying. The verdict is not against the great weight of the evidence.

The convictions are affirmed.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, MCALLISTER, and WIEST, JJ., concurred.