PEOPLE *v.* CAUSLEY.

1. MALICIOUS MISCHIEF—ELECTRIC TRANSMISSION WIRE.
    Injuring maliciously an electric transmission wire is wrong, not because it is prohibited but because of its intrinsic wickedness.

2. CONSPIRACY—COMMON LAW.
    Conspiracy to do an unlawful act was an indictable offense at the common law.

3. SAME—OFFENSE AT COMMON LAW—STATUTES.
    A combination of two or more persons to commit some act known as an offense at common law, or that has been declared such by statute, constituted an indictable conspiracy at common law.

4. CRIMINAL LAW—COMMON LAW—MERGER OF OFFENSES.
    At common law an offense of lower grade may merge in one of higher grade, but where the grades of the two offenses are equal, no merger is possible.    .

5. SAME—COMMON LAW—CONSPIRACY—MERGER OF OFFENSES.
    At common law a conspiracy to commit a felony is merged in the felony, if the latter is committed, but a conspiracy to commit a misdemeanor is not merged, though the misdemeanor be committed.

6. CONSPIRACY—COMMON LAW.
    At common law the crime of conspiracy was that of misdemeanor only.

7. CRIMINAL LAW—MERGER OF OFFENSES—STATUTES.
    The doctrine of merger of offenses has been abolished in Michigan by statute (3 Comp. Laws 1929, § 17297).

8. SAME—LEGISLATURE.
    It is within the power of the legislature to correct incongruities in penal statutes and to designate the grade and prescribe the punishment of offenses.

9. SAME—DISTINCTION BETWEEN MISDEMEANORS AND FELONIES.
    The sole remaining distinction between misdemeanors and felonies, as grades of crimes, is the place and severity of punishment.

10. Same—Definitions—Felonies—Misdemeanors.

Felonies are offenses for which the offender may, on conviction, be punished by death, or by imprisonment in the State prison, while misdemeanors are all other offenses punishable by fine or imprisonment or by both in the discretion of the court (Act No. 328, §§ 7, 8, Pub. Acts 1931).

11. Conspiracy—Misdemeanor—Punishment.

Conspiracy to commit a misdemeanor may be punishable more severely than the misdemeanor itself.

12. Same—Elements of Offense.

The confederation or agreement by two or more persons to commit an offense is itself the offense of conspiracy and is complete the moment the agreement is entered into.

13. Criminal Law—Common Law—Accessories.

At common law an accessory before a felony is punished as an accessory whereas an accessory before a misdemeanor is punished as a principal.

14. Same—Conspiracy to Commit Malicious Mischief—Punishment.

The malicious damaging and destruction of poles and wires of an electric company, an offense punishable as a misdemeanor when the object of a conspiracy, constitutes the common-law crime of conspiracy, and since no provision is made specifically for the punishment of such offense of conspiracy, it is a felony punishable by imprisonment in the State prison not more than five years or by a fine of not more than $2,500 (Act No. 328, §§ 383, 505, Pub. Acts 1931).

Appeal from Iosco; Dehnke (Herman), J. Submitted September 9, 1941. (Calendar No. 41,141.) Decided October 6, 1941.

Monroe Causley was charged with conspiracy to damage and destroy poles and wires of public utility corporation. Defendant reviews order denying motion to dismiss by appeal in the nature of mandamus. Writ denied.

*William L. Hellerman, John J. McGinty,* and *Dennis J. O'Keefe (Maurice Sugar,* of counsel), for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund H. Shepherd,* Solicitor General, *John A. Stewart,* Prosecuting Attorney, and *A. J. Neberle,* Assistant Prosecuting Attorney, for the people.

BUTZEL, J. Because of unusual circumstances we issued an order to show cause why the circuit judge should not have granted a motion to dismiss the information, which charged defendant Causley and others with conspiracy to damage and destroy the poles and wires of the Consumers Power Company, a public utility corporation. As the jury were unable to agree upon a verdict, the testimony given on the trial need not be reviewed.

Defendant advances two arguments in support of his motion to dismiss:

1. Conspiracy is an offense known to the common law. Conspiracy to commit a common-law crime is itself a common-law crime. But an agreement or confederation to commit a crime created by statute, and unknown to the common law, cannot be the common-law crime of conspiracy. The crime contemplated by the confederacy in the case at bar, malicious injury to electric transmission wires, is a creature of statute (Act No. 328, § 383, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115–383, Stat. Ann. § 28.615]), did not exist at common law, and an agreement the object of which is to commit an injury to something which was obviously unknown at the time we adopted our Constitution cannot, therefore, be a common-law conspiracy.

2. Conspiracies to commit crime are historically and logically germane to attempts to commit crime, and it would be incongruous for a conspiracy to commit a crime to be accounted as of a higher grade than the crime contemplated by such conspiracy. With respect to attempts, the legislature has pro-

vided that the grade and punishment of an attempt to commit a crime shall vary with, and be less than, the grade and punishment of the crime attempted (Act No. 328, § 92, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115–92, Stat. Ann. § 28.287]). A similar legislative intent must be presumed with respect to conspiracies, and if the object of an agreement is to commit a statutory misdemeanor, malicious injury to electric transmission wires (Act No. 328, § 383, Pub. Acts 1931), which is punishable at most by imprisonment in the county jail for 90 days and fine of $100 (Act No. 328, § 504, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115–504, Stat. Ann. § 28.772]), it would be the height of absurdity to hold that a conspiracy to commit such a misdemeanor is a felony, punishable by imprisonment in State prison for not more than 5 years, or by fine of not more than $2,500 (Act No. 328, § 505, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115–505, Stat. Ann. § 28.773]).

In answer to the first contention, it must first be observed that the thing defendant conspired to do is *malum in se,* not *malum prohibitum.* Injuring maliciously an electric transmission wire is wrong, not because it is prohibited (as driving on the left side of the street would be), but because of its intrinsic wickedness. It is a mooted question whether malicious mischief of this sort is a crime at common law; the fact that statutes were passed in England from a very early date defining elaborately the various types of indictable malicious mischief leaves the question obscure, if not insoluble (Clark & Marshall on Crimes [4th Ed.], § 391, p. 509); but we shall assume solely for the purposes of this decision that the act he conspired to do was not a crime at common law, and is such only by virtue of our statute. Nevertheless, we have so often declared

the law to be that "Conspiracy to do an unlawful act was an indictable offense at the common law, and there never was any distinction between conspiracy to commit an act which was unlawful at the common law or which is declared to be unlawful by statute" (*People* v. *Watson,* 75 Mich. 582, 586) that we are surprised that counsel raise the issue at this date. Our declaration of like tenor, in *Alderman* v. *People,* 4 Mich. 414, 432 (69 Am. Dec. 321), based on a careful review of the authorities at that date (1857), "that, to constitute an indictable conspiracy, there must be a combination of two or more persons to commit some act, known as an offense at common law, or that has been declared such by statute," is echoed in *People* v. *Schultz,* 210 Mich. 297, 313; *People* v. *Tenerowicz,* 266 Mich. 276, 282; *People* v. *Beath,* 277 Mich. 473, 479; and *People* v. *Fields,* 288 Mich. 166, 169.

The development of the crime of conspiracy during the successive centuries of English history is an interesting subject from the academic point of view, and valuable contributions of this character have been made by Justice Wright in his work, "The Law of Criminal Conspiracies" (London, 1873), Professor Holdsworth in his "History of English Law," Mr. Francis B. Sayre in his article, "Criminal Conspiracy," 35 Harvard Law Review, p. 393, and Mr. James W. Bryan in his "Development of the English Law of Conspiracy."

These writers make it plain that during the Middle Ages prosecutions for criminal conspiracy were strictly confined to the specific cases enumerated in the early Edwardian statutes on the subject, but that, during the seventeenth century, the scope of the offense was greatly broadened by the Courts of Star Chamber and King's Bench. The first step in extending the limits of the common-law crime was taken in 1611, when it was decided, in the celebrated

*Poulterers' Case,* 9 Coke, 55b (77 Eng. Rep. 813), that a mere conspiracy, though nothing was executed, or "put in ure," was indictable. The object of that conspiracy was falsely to accuse the prosecutor of robbery, which was clearly indictable under the early statutes of conspirators. Mr. Sayre proceeds:

"During the seventeenth century the courts took a second step in extending and broadening the limits of the crime of conspiracy of even greater importance than the one just described. Prior to this century, the crime had been confined very strictly to combinations to defeat the just administration of the law, such as the procuring of false indictments, embracery, and maintenance. During the seventeenth century the courts began to extend the offense so as to cover combinations to commit all crimes of whatsoever nature, misdemeanors as well as felonies. This was a bold extension indeed. It was due in part to the abolition of the Court of Star Chamber, which cast upon the Court of King's Bench the duty, hitherto assumed by the Star Chamber, of dealing with misdemeanors; and the judges of King's Bench, groping their way through unfamiliar paths, tried new legal adventures." (35 Harvard Law Review, pp. 393, 400).

And Holdsworth, after remarking that "in the *Poulterers' Case* it was ruled in the Star Chamber that the mere conspiracy, though nothing was executed, was an offense," asks:

"But, if a conspiracy is so regarded, why restrict it to conspiracies to commit some offense in relation to legal proceedings? The Star Chamber acted upon this view; and just as it punished all kinds of attempts to commit wrongful acts, so, *a fortiori,* it punished all kinds of conspiracies to commit the many varied offenses punishable either by it or by the common-law courts." (5 History of

English Law, pp. 204, 205; for further discussion, see vol. 8, pp. 378–384.)

During the period under discussion, there were not many statutory misdemeanors; therefore, it is not surprising that no cases of common-law criminal conspiracies to commit statutory misdemeanors are found in the early English books. Many offenses which now are punished by temporal statutes were then cognizable only by the ecclesiastical courts, and by them punished as canonical crimes. It is noteworthy that the common-law courts undertook to punish conspiracies to commit such offenses, which were utterly unknown to the common law, as common-law crimes. *Rex* v. *Lord Grey* (K. B. 1682), 9 State Trials, 127; *Rex* v. *Delaval* (K. B. 1763), 3 Burr. 1434 (97 Eng. Rep. 913). If the common-law courts would punish as a common-law misdemeanor a conspiracy to commit an offense unknown not only to the common law, but also to any branch of the temporal law, it is deducible, *a fortiori,* that they would punish in like manner a conspiracy to commit an offense unknown to the common law, but created by statute law of the realm.

This deduction is supported by the authorities. In *Rex* v. *Journeymen-Taylors of Cambridge* (K. B. 1721), 8 Mod. 10 (88 Eng. Rep. 9), the affirmance of conviction, despite much loose language in the opinion, may really be grounded upon the fact that defendants were guilty of a common-law misdemeanor in that they conspired to violate an act of parliament (7 Geo. I, Stat. 1, chap. 13, § 7 [1720]) which created a new misdemeanor, unknown to the common-law. *Rex* v. *Turner* (K. B. 1811), 13 East, 228 (104 Eng. Rep. 357), which is of opposite tendency, was overruled by *Regina* v. *Rowlands* (K. B. 1851), 2 Den. 364, 388 (169 Eng. Rep. 540, 550–551).

The last-mentioned case is squarely in point with the case at bar, with respect to the point under discussion. An act of parliament (6 Geo. IV, chap. 129, § 3 [1825]) had created a new misdemeanor, unknown to the common law (intimidating or molesting a workman), and defendants were indicted for the common-law misdemeanor of conspiring to commit the statutory misdemeanor. In affirming conviction, Lord Chief Justice Campbell held (p. 388):

"An agreement to commit an indictable offence undoubtedly amounts to a conspiracy."

In *People* v. *Richards,* 1 Mich. 216, 221–222 (51 Am. Dec. 75), we declared that at common law an offense of lower grade may merge in one of higher grade, but that where the grades of the two offenses are equal, no merger is possible; hence that a conspiracy to commit a felony is merged in the felony, if the latter is committed, but a conspiracy to commit a misdemeanor is not merged, though the misdemeanor be committed. All this was said in respect to the common-law grade of the crime of conspiracy, which was that of misdemeanor only. Even where it formerly applied, the doctrine of merger has been abolished in this State by statute (3 Comp. Laws 1929, § 17297 [Stat. Ann. § 28.1027]). Nevertheless, *People* v. *Richards* is important as indicating that conspiracy to commit a misdemeanor was recognized as a crime at common law. The annotation to this case, 51 Am. Dec. 82–94, collates many American cases to this effect at page 90, some of which are conspiracies to commit statutory misdemeanors. In *State* v. *Buchanan* (1821), 5 H. & J. (Md.) 317, 335 (9 Am. Dec. 534, 546), Justice Buchanan exclaims:

"Who doubts, or was it ever questioned that a conspiracy to commit any felony is an indictable of-

fense, as to rob or murder, to commit a rape, burglary or arson, et cetera, or a misdemeanor, as to cheat by false public tokens, et cetera?''

Further authorities, if they were needed, in support of the proposition that a conspiracy to commit a statutory misdemeanor is a common-law misdemeanor may be found in 1 Russell on Crimes and Misdemeanors (8th Ed.), p. 155, notes (t) and (u); Clark & Marshall on Crimes (4th Ed.), § 131, and cases therein cited.

Passing to the second question raised by defendant, we at once observe the argumentative force thereof, but are constrained to hold that the proper authority to correct the incongruity whereof he complains is the legislature, rather than this court. It is now over a century since the legislature first enacted that

''All * * * offences of an indictable nature at common law, and not provided for in * * * some * * * law of this State, shall be punished,'' et cetera (Act No. 39, § 7, Pub. Acts 1840).

There can be no doubt that until 1927 such common-law offenses were punishable as misdemeanors (Rev. Stat. 1846, chap. 161, § 22), nor that, since 1927, they have been felonies (Act No. 175, chap. 9, § 15, Pub. Acts 1927 [3 Comp. Laws 1929, § 17343]; Act No. 328, § 505, Pub. Acts 1931). It is within the power of the legislature to designate the grade and prescribe the punishment of offenses. Since the ancient common-law distinction between felonies and misdemeanors, such as that the lands and goods of felons were forfeited in all cases, while in the case of misdemeanors there was either no forfeiture at all, or a much more limited one, or that one accused of felony had no right to counsel in his defense, while one accused of misdemeanor did, do not obtain in this State, the substance of defendant's

complaint is directed to the sole remaining distinction between the two grades of crimes, namely, place and severity of punishment. A crime is: (1) a felony; or (2) a misdemeanor (Act No. 328, § 6, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115–6, Stat. Ann. § 28.196). Felonies are offenses for which the offender may, on conviction, be punished by death, or by imprisonment in the State prison; misdemeanors are all other offenses punishable by fine and imprisonment, or by fine or imprisonment in the discretion of the court (Definition of felony: Rev. Stat. 1846, chap. 161, § 18, reenacted in substance in Act No. 175, chap. 1, § 1, Pub. Acts 1927 [3 Comp. Laws 1929, § 17118 (Stat. Ann. § 28.843)], and Act No. 328, § 7, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115–7, Stat. Ann. § 28.197]; definition of misdemeanor: Rev. Stat. 1846, chap. 128, § 11, reenacted in Act No. 314, chap. 35, § 11, Pub. Acts 1915 [3 Comp. Laws 1929, § 15150], now Act No. 328, § 8, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115–8, Stat. Ann. § 28.198]).

Even while the grade of criminal conspiracy remained that of misdemeanor, cases could and did arise in Michigan in which the punishment meted out for the conspiracy was greater than the maximum which could be visited upon the contemplated crime, though the latter had been committed. Thus, in *People* v. *Gilman,* 121 Mich. 187 (46 L. R. A. 218, 80 Am. St. Rep. 490), defendant was convicted of conspiracy to defraud one Sadler of $1, and the evidence showed that the $1 had been by such fraud obtained. Had Gilman been prosecuted merely for committing the statutory misdemeanor of obtaining goods of value less than $25, by means of false pretenses, he could at most have been punished by fine of $100 or imprisonment in the county jail for 3 months (3 Comp. Laws 1897, § 11575), but he was prosecuted under the common-law offenses statute

(3 Comp. Laws 1897, § 11795) and sentenced to imprisonment in the house of correction for 2 years. We affirmed the conviction. Again, in *People* v. *Lamb*, 153 Mich. 675, a justice of the peace and an attorney were convicted of conspiring to extort excessive fees for the official services of the former from a litigant. The offense contemplated was accomplished; it was a statutory misdemeanor (3 Comp. Laws 1897, §§ 11240, 11242) for which no punishment was prescribed in the statute defining it: the penalty therefor was fixed by general statute (3 Comp. Laws 1897, § 11331) at imprisonment in the county jail for not more than 1 year, or fine of $250, or both. They were prosecuted, however, under the common-law offenses statute (3 Comp. Laws 1897, § 11795), for conspiracy, and faced upon conviction a possible penalty of imprisonment in the county jail for 2 years, or fine of $2,000, or both. What sentence was actually imposed is not disclosed by the report, but the disparity in the legal maximums was there.

Connecticut, like Michigan, has a common-law offenses statute. Until quite recently, when it received comprehensive statutory definition, criminal conspiracy in Connecticut was prosecuted and punished under the common-law offenses statute of that State. One such prosecution was *State* v. *Setter*, 57 Conn. 461 (18 Atl. 782, 14 Am. St. Rep. 121), in which defendant was convicted of conspiracy to commit a statutory misdemeanor (theft). Defendant complained that the penalty for conspiracy was more severe than that for theft of goods of value less than $15, and argued that the conspiracy should be regarded as merged in the committed offense, in order to avoid this harsh and anomalous result. In rejecting the claim of merger (since both offenses were misdemeanors), the supreme court of errors remarked:

"Conspiracy may be punished by imprisonment in the State prison for a term not exceeding 5 years and by a fine not exceeding $500. Larceny to any value less than $15 can be punished by no more than 30 days in the county jail and a fine of not more than $7. By this test conspiracy is much the greater crime.

"Nor are the ingredients of conspiracy the same as of theft. Theft may be committed by one person as well as by two or more; it requires some physical act in the nature of a trespass by which the possession of the thing stolen is taken from the owner, and the act must be accompanied by the intent of the thief to deprive the owner of his property. On the other hand conspiracy cannot be committed except by two or more persons. It is the agreeing or confederating together by two or more persons to commit some crime or misdemeanor. Such confederation or agreement is itself the offense. Unlike theft, no overt act is necessary, the unlawful agreement makes the crime, and it is complete the moment the agreement is entered into." (*State* v. *Setter,* 57 Conn. 461, 469, 470 [18 Atl. 782, 14 Am. St. Rep. 121].)

Very similar distinctions could be properly drawn between the crime of conspiring to injure electric transmission wires, and that of actually injuring them, under the laws of this State. Another Connecticut case where a conspiracy to commit a statutory misdemeanor carrying a small penalty was punished as a common-law offense with a much greater punishment is *State* v. *Murphy,* 124 Conn. 554 (1 Atl. [2d] 274). See, also, *State* v. *Hayes,* 127 Conn. 543 (18 Atl. [2d] 895, 923).

Defendant fears that, unless we somehow decide that section 505 of the penal code does not mean what it says when it defines as felonies all offenses indictable at common law for the punishment of which no provision is expressly made by any statute

of this State, in the future, some overzealous prosecutor will prosecute two or more persons for conspiring to commit some very petty misdemeanor, and some unrestrained trial judge will then proceed to impose the maximum sentence which section 505 permits. While we do not share his apprehension, we are not unmindful of the possibility which defendant suggests. His argument may well appeal to the legislature. That body, however, so far as the offense which this defendant conspired to commit is concerned, has very recently raised the grade of the crime of maliciously injuring electric transmission lines to that of felony by an act (Act No. 328, § 383a, Pub. Acts 1931, as added by Act No. 190, Pub. Acts 1941 [Comp. Laws Supp. 1942, § 17115-383a, Stat. Ann. 1941 Cum. Supp. § 28.615 (1) ] ) which does not fix any punishment therefor. Hence the punishment thereof is now fixed by general statute (Act No. 328, § 503, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115-503, Stat. Ann. § 28.771]) at imprisonment in State prison for not more than 4 years, or fine of not more than $2,000, *or both*. Conspiracy may be punished, under section 505, *either* by imprisonment in State prison not more than five years *or* by fine of $2,500, but not both. We point this out, although the recent act cannot of course affect decision of this case, because we think it indicative of the seriousness of the offense conspired to be committed, and actually committed, in the case at bar. It can readily be seen how a conspiracy by a number of malefactors to injure and destroy the poles and wires of a public utility might have dire consequences to the health, safety and comfort of a large population, and how concerted action might make detection of the individuals who perpetrated the overt act difficult, if not impossible, in many cases.

Other questions were raised, but are without merit, and are not discussed. In passing we note

that the fact that at common law an accessory before a felony is punished as an accessory, whereas an accessory before a misdemeanor is punished as a principal, has no bearing in this case, which involves a crime distinct from the misdemeanor committed. The motion to dismiss the information was properly overruled, and the order of the circuit judge is therefore affirmed.

Mandamus denied.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, STARR, and WIEST, JJ., concurred.