PEOPLE *v.* SCADUTO.

1. CRIMINAL LAW—EXAMINATION OF JURORS—RELATIONSHIP—NICK-
   NAMES.

   In prosecution of man and woman for selling liquor without
   a license, trial judge's statement in examination of jurors
   that case was against the defendants, naming them, and that
   woman was "apparently his wife" who would be referred
   to in the testimony as "Diamond Lil" *held,* not objectionable
   in view of her testimony she had been married to other de-
   fendant 25 years and nickname had been acquired when she
   operated the "Diamond Barbeque" and judge was only en-
   deavoring to find out if any of the jurors knew her by such
   name (Act No. 8, § 32, Pub. Acts 1933 [Ex. Sess.], as
   amended by Act No. 281, Pub. Acts 1937).

2. SAME—COMMENT BY COURT.

   Court's remark in prosecution for selling liquor without a li-
   cense that "It certainly is a cold night. We got that set-
   tled all right," *held,* deprecable levity on part of court
   but not prejudicial error where made after several state-
   ments by different witnesses that the night on which the
   liquor had been sold was a cold one (Act No. 8, § 32, Pub.
   Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts
   1937).

3. SAME—PREVIOUS CONVICTIONS—EVIDENCE—COMMENT OF COURT.

   Defendant in prosecution for selling liquor without a license
   who, after much hesitation, denied having been convicted
   previously, was not prejudiced by court's refusal to permit
   prosecution time to obtain evidence contrary to such denial
   and asking assistant prosecuting attorney whether he wanted
   one or two minutes for argument of people's case to jury
   (Act No. 8, § 32, Pub. Acts 1933 [Ex. Sess.], as amended by
   Act No. 281, Pub. Acts 1937).

4. SAME—RES GESTAE WITNESSES—INDORSEMENT OF NAMES ON IN-
   FORMATION—REQUEST TO CHARGE—INSTRUCTIONS.

   In prosecution for selling liquor without a license wherein it
   is claimed there were *res gestae* witnesses available and
   known to prosecutor but whose names were not indorsed on

information and such witnesses were not produced in court, court's failure to instruct jury with reference to prosecutor's duty as to indorsement of names and production of witnesses was not ground for setting aside verdict where defendants failed to request indorsement of witnesses or that the trial judge make such a charge (3 Comp. Laws 1929, § 17322; Act No. 8, § 32, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

5. SAME—WITNESSES—INTOXICATING LIQUORS—INDORSEMENT OF NAMES.

In prosecution for selling liquor without a license in which it appeared that the two defendants and 15 customers were arrested but that charges against the customers were shortly dismissed by a justice of the peace, it was unnecessary for prosecution to indorse names of customers on information or call such witnesses where circumstances were such that they could have given only negative testimony as to themselves, prosecution did not claim they were material witnesses, and defendants did not show that they were (Act No. 8, § 32, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

6. SAME—ENTRAPMENT—SELLING LIQUOR WITHOUT A LICENSE.

In prosecution for selling liquor without a license, conviction will not be set aside because of entrapment by officers where evidence warranted jury's finding that crime was completed without the assistance of the law-enforcing officers (Act No. 8, § 32, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

7. SAME—REQUEST TO CHARGE—ENTRAPMENT.

Failure of trial court to instruct jury as to alleged entrapment is not ground for reversible error where no request to charge relative thereto had been made (3 Comp. Laws 1929, § 17322).

8. INTOXICATING LIQUORS—ENTRAPMENT.

It is not entrapment in a liquor case for police or prosecuting officers to purchase liquor from defendants at their regular place of business or where it is suspected they are selling it.

9. CRIMINAL LAW—COURT'S STATEMENT OF CLAIM—INSTRUCTIONS.

In prosecution for selling liquor without a license, court's statement that claim of prosecution was that deputy sheriff and two others entered defendants' place of business, purchased

whiskey, and produced a sample after having it analyzed by a chemist *held,* not erroneous when considered merely as statement of prosecution's claim and was immediately followed by a statement of defendant's claim (Act No. 8, § 32, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937).

Appeal from Wayne; Moll (Lester S.), J. Submitted April 16, 1942. (Docket No. 83, Calendar No. 41,812.) Decided May 18, 1942.

Angelo Scaduto and Lillian Scaduto were convicted of selling liquor without a license. Affirmed.

*Bernard A. Pearl,* for appellants.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *William E. Dowling,* Prosecuting Attorney, and *Richard S. DeCoursey* and *Henrietta E. Rosenthal,* Assistant Prosecuting Attorneys, for the people.

BUTZEL, J. Angelo Scaduto and Lillian Scaduto were found guilty of selling liquor without a license.* Plaintiff presented the following testimony. About 2:30 a.m., February 16, 1941, a deputy sheriff obtained a Coca Cola bottle from a saloonkeeper, who, together with a waitress, accompanied the deputy sheriff to the restaurant of defendants in Livonia township, Wayne county, for the purpose of buying liquor. When they arrived at defendants' restaurant, Lillian Scaduto, referred to as "Diamond Lil," first took an order for sandwiches at which time they also asked for a drink. She stated that she did not know whether they could get anything or not, that they would have to wait awhile. Later when they

---

* See Act No. 8, § 32, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 281, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 9209–47, Stat. Ann. 1941 Cum. Supp. § 18.1003).—REPORTER.

said they were cold, she served each of them with an alcoholic drink in a cup. After each of them tasted it, the remainder was poured into the Coca Cola bottle. They were served two more drinks which were disposed of in a similar manner. Scratches had been made on the cap of the bottle so as to identify it. After they left the restaurant they gave the bottle to another deputy sheriff who, after putting a seal on the bottle so as to identify it, turned it over to the authorities for analysis.

On the other hand, Lillian Scaduto, the only defendant who testified, stated that no sale of liquor was ever made, that she twice refused plaintiff's witnesses any liquor and stated that she had none and that only when they told her that the waitress was in pain, she went over to her chef, who carried a pint on his person, and that she poured some of it into a cup and handed it to the deputy sheriff, but accepted no. money for it. The cook or chef corroborated Mrs. Scaduto's testimony to the effect that he supplied Mrs. Scaduto with a half pint of whiskey which he had in his coat pocket. The jury found defendants guilty and the judge sentenced each to a term of from 11 months to one year. But few objections were made at the trial and many questions raised for the first time on appeal; few of them have sufficient merit even to call for discussion.

In his examination of the jury, the trial judge stated that the case was one against Angelo Scaduto and Lillian Scaduto, "apparently his wife," and also that Lillian Scaduto would be referred to in the testimony as "Diamond Lil." Appellants claim that reference to Lillian Scaduto as "apparently" Angelo's wife was derogatory in that it intimated that she was not his wife. We find nothing objectionable in the remark particularly in view of her testimony that she had been married to Angelo for

over 25 years. Again, it is claimed that by stating that he imagined Lillian would be referred to as "Diamond Lil," the judge cast some aspersions on her. The context of the remark shows that the judge was only endeavoring to find out if any of the jurors knew defendant Lillian under the nickname "Diamond Lil." No objection whatsoever was made by defendants' counsel, and when Mrs. Scaduto took the stand, the first question her counsel asked, after she stated that she owned and operated the Diamond Barbeque, was whether that was the way in which she got the name "Diamond Lil." Her answer was in the affirmative. She later testified on cross-examination that she was called "Diamond Lil," that she did not like the name and hated to be called that name, that she personally did not use the name and never had. We find no error.

After the first witnesses had testified that they told Mrs. Scaduto that it was very cold that night, and that they were very cold and would like to have a drink, and the waitress also testified that the night was "awfully cold," the court made the remark:

"It certainly is a cold night. We got that settled all right."

No objection was made to this statement nor did the attorney of defendant ask to have it stricken. While we deprecate any expression of levity on the part of a trial judge, nevertheless we find no prejudicial error.

In the cross-examination of defendant Lillian Scaduto, she was asked whether she had been arrested and convicted, and her answer was, "Not that I know of." Then she was asked whether she had been arrested and convicted on October 24, 1924, and her answer was, "I wouldn't remember." Again she was asked whether she was arrested and

convicted on April 10, 1925, and her answer was, "I wouldn't remember." And similarly when she was asked whether she had been arrested and convicted on January 6, 1928, she stated that she "wouldn't remember," and that it was so far back that she "couldn't remember." She finally stated that she had never been convicted that she knew of. Towards the conclusion of the taking of the testimony, the assistant prosecutor stated that he was placed in a position where he wanted to prove to the contrary. The court asked him what else he had and how long he wanted to argue, "one or two minutes," and he replied:

"Two minutes is long enough for me."

When the court asked how long defendant's attorney wanted to argue, he replied:

"Not more than ten minutes."

No further testimony was taken and the arguments were begun. The record contains only 14 pages of testimony. Evidently the trial took but a short time and the judge did not see any good reason for delay. Defendants claim that the judge's asking the prosecution whether the argument was to be one or two minutes was error, that it might lead to the inference that there was so little to the case that one or two minutes should be sufficient. The query arises whether it was not more prejudicial to the prosecution than to the defense. It was entirely up to the trial judge to determine whether the prosecution should have time to confront defendant with the record of convictions, if there were any, and the failure to give the prosecution this opportunity was not, prejudicial to Mrs. Scaduto who, after much hesitation, had testified that she never had been convicted.

Appellants further state through their attorney in their statement of questions involved:

"Where there were *res gestae* witnesses available, and the prosecutor had knowledge of this fact long before the trial of this cause, but they were not indorsed on the information and were not produced in court, did the court err in failing to instruct the jury with reference to the duty of the prosecutor so to indorse and produce such *res gestae* witnesses?"

No request was made for the indorsement of such witnesses or that the trial judge make such a charge. For that reason failure so to instruct was no ground for setting aside the verdict. 3 Comp. Laws 1929, § 17322 (Stat. Ann. § 28.1052). The testimony shows that shortly after the purchase of the liquor by the deputy sheriff, he returned with another deputy, and defendants and 15 other customers were put under arrest. A justice of the peace was called and he dismissed the charges against these 15 customers. Their names are not indorsed on the information, nor were they called as witnesses. The prosecution does not claim that they were material witnesses, nor did defendants show that they were. The alcohol beverage was served in cups. At most, these alleged witnesses could have given only negative testimony as to themselves. Under the circumstances of the case, it was not necessary for the prosecutor to call them or indorse their names as witnesses.

Defendants further claim that the court erred in failing to charge the jury on the law of entrapment. They assert that defendants refused to sell any liquor, and that only when claim was made that the waitress, who accompanied the deputy sheriff, was in pain, did Lillian Scaduto, without exacting or receiving any money, give her a small amount of liquor. The judge narrowed the issue to the sale of liquor

without a license. He fairly stated the defendants' claim as well as that of the people. Only recently in *People* v. *Smith,* 296 Mich. 176, we discussed the law of entrapment. Since the jury believed the witnesses for the prosecution, that case disposes of all of defendants' claims regarding entrapment except the failure of the judge to instruct the jury. As to the latter, we again call attention to 3 Comp. Laws 1929, § 17322 (Stat. Ann. § 28.1052). It is not entrapment in a liquor case for police or prosecuting officers to purchase liquor from defendants at their regular place of business or where it is suspected they are selling it.

Again, defendants claim that the court erred in charging the jury that the claim of the State was that the deputy sheriff, accompanied by two others, entered defendants' place of business, that they purchased whiskey, a sample of which was produced after having been analyzed by a chemist. We find no error in this statement. It simply outlined the claim of the prosecution and was immediately followed by a statement of the claim of defendants.

It is not necessary to discuss the other errors claimed as there is absolutely no merit in them. Defendants had a fair trial. The testimony shows that the jury was amply justified in bringing in a verdict of guilty.

The conviction is affirmed.

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUSHNELL, and SHARPE, JJ., concurred.