## PEOPLE *v.* EWALD.

1. CRIMINAL LAW—ONE-MAN GRAND JURY—JURISDICTION OF RE-
CORDER'S COURT OF DETROIT.

    The proceedings for the discovery of crime, brought before
circuit judge acting as a so-called one-man grand jury, are
not "prosecutions and proceedings * * * for crimes" as
such terms are used in statute setting forth jurisdiction of
the recorder's court of Detroit (3 Comp. Laws 1929, §§ 16300,
17117, 17118, 17217, 17218).

2. SAME—INVESTIGATION OF CRIME—JURISDICTION OF ONE-MAN GRAND
JURY—CIRCUIT JUDGES—RECORDER'S COURT.

    A circuit judge conducting an investigation for the purpose of
discovering crime within a county has authority to cause ap-
prehension of an individual therein by proper process under
the general code of criminal procedure notwithstanding re-
corder's court for city located within such county had been
given exclusive jurisdiction of "all prosecutions and proceed-
ings * * * for crimes * * * committed within the
corporate limits of the city" and may require any person who
may be able to give any material evidence respecting mat-
ter under investigation to attend as a witness and answer
such questions as the judge may require concerning any vio-
lation of the law about which he may be questioned (3 Comp.
Laws 1929, §§ 16300, 17117, 17118, 17217, 17218).

3. COURTS—ONE-MAN GRAND JURY—JURISDICTION.

    The jurisdiction of a court conducting a one-man grand jury
is determined by its territorial limits and not by limitations
upon the court's power to hear and determine criminal cases
(3 Comp. Laws 1929, §§ 17217–17220).

4. SAME—RECORDER'S COURT OF DETROIT—JURISDICTION.

    Under statute setting forth that jurisdiction of recorder's court
of Detroit shall be exclusive as to "all prosecutions and pro-
ceedings * * * for crimes" and providing that indict-
ments for offenses committed within the limits of the city
which may be found and presented to the circuit court by the
grand jury shall be certified and transmitted to the recorder's

court and that such latter court shall then have full and complete jurisdiction and power to take all further proceedings thereon, exclusiveness of jurisdiction of recorder's court does not extend to the initiatory step in the institution of proceedings but merely to matters subsequent thereto connected with bringing an offender to trial; hence process was properly returnable to recorder's court (3 Comp. Laws 1929, §§ 16300, 16301, 16320, 17117, 17118, 17217, 17218).

5. CRIMINAL LAW—DECLARATIONS OF ACCOMPLICES.

Where several persons are engaged in one common unlawful enterprise, whatever is said or done by any one of them in the prosecution of the common enterprise, or while it is still in progress, is evidence against all the parties to it.

6. BRIBERY—EVIDENCE—STATEMENTS OF CONSPIRATORS.

In prosecution for accepting a bribe by accepting a promise, and later money in execution thereof, for corrupt purposes, where evidence produced was of such a nature that jury could find that three others and defendant entered into a conspiracy to obtain a contract by aid of defendant's vote as a member of common council of a city, statements of any of the conspirators could be used as evidence against defendant and hence admission of such evidence was not error (Act No. 328, § 118, Pub. Acts 1931).

7. SAME—GREAT WEIGHT OF EVIDENCE—REASONABLE DOUBT.

In prosecution for accepting a bribe where there was evidence from which a jury could find that the payment of money to defendant was for corrupt purposes, the only evidence introduced was that tending to show defendant's guilt, and defendant neither took the stand nor offered any proof whatsoever, it was for jury to say whether evidence admitted was sufficient to establish guilt beyond a reasonable doubt and its findings thereon will not be disturbed as against the great weight of the evidence as there was no evidence to weigh against that tending to establish guilt (Act No. 328, § 118, Pub. Acts 1931).

8. SAME—INSTRUCTIONS—INTENT.

In prosecution for accepting a bribe, court committed no error in its charge relative to intent on part of defendant and amply protected his rights (Act No. 328, § 118, Pub. Acts 1931).

Appeal from Recorder's Court of the City of Detroit; Skillman (W. McKay), J. Submitted April 16, 1942. (Docket No. 85, Calendar No. 41,849.) Decided June 5, 1942. Rehearing denied September 8, 1942. Certiorari denied by Supreme Court of the United States December 7, 1942.

Robert G. Ewald was convicted of accepting a bribe. Affirmed.

*Edward N. Barnard,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *William E. Dowling,* Prosecuting Attorney, and *John A. Ricca, John W. Gilmore, Henrietta E. Rosenthal,* and *Ralph E. Helper,* Assistant Prosecuting Attorneys, for the people.

SHARPE, J. Defendant Robert G. Ewald was convicted of bribery in violation of Act No. 328, § 118, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–118, Stat. Ann. § 28.313), which reads as follows:

"Any executive, legislative or judicial officer who shall corruptly accept any gift or gratuity, or any promise to make any gift, or to do any act beneficial to such officer, under an agreement, or with an understanding that his vote, opinion or judgment shall be given in any particular manner, or upon a particular side of any question, cause or proceeding, which is or may be by law brought before him in his official capacity, or that in such capacity, he shall make any particular nomination or appointment, shall forfeit his office, and be forever disqualified to hold any public office, trust or appointment under the Constitution or laws of this State, and shall be guilty of a felony, punishable by imprisonment in the State prison not more than ten

years, or by fine of not more than five thousand dollars."

The information charged defendant upon three counts. The first count in the information charged bribery in that defendant accepted a promise of $5,000 for corrupt purposes. The second and third counts charged acceptance of $1,000 and $4,000 in execution of the promise previously accepted. It was charged that the $1,000 was accepted on or about August 27, 1940, and $4,000 on or about September 18, 1940.

Defendant was a member of the common council of the city of Detroit. Under the ordinances of the city of Detroit, defendant, as a member of the common council, was to vote on the approval of all contracts of the Detroit housing commission.

The Detroit housing commission had under consideration the matter of the construction of the S. James Herman Gardens Housing Project and on August 16, 1940, passed a resolution in favor of awarding the contract for steel construction of the project to Maurice L. Bein, Inc.

This recommendation of the Detroit housing commission was rejected; and on August 27, 1940, the common council of the city of Detroit had before it for consideration whether the construction should be steel or concrete. On that date, it tabled a resolution to award the contract to A. Smith & Company and Lipman Construction Company for concrete construction. On September 3d, the common council voted in favor of this resolution and later the contract was awarded to A. Smith & Company and Lipman Construction Company. Defendant, Robert G. Ewald, voted in favor of Smith and Lipman for concrete construction.

Prior to this time there was much public discussion of graft, bribery and corruption in high official

circles and Circuit Judge Homer Ferguson was
designated by the circuit judges of Wayne county
to conduct the proceedings for the discovery of
crime under 3 Comp. Laws 1929, § 17217 *et seq.*
(Stat. Ann. § 28.943 *et seq.*). As a result of this in-
quiry the circuit judge issued findings stating that
he was satisfied that there was probable cause to
suspect that defendant had committed a felony by
accepting a bribe. The complaint and warrant, di-
rected to law enforcement officers, commanded that
defendant be apprehended and brought before the
recorder's court of the city of Detroit to be dealt
with according to law. A judge of the recorder's
court sitting as an examining magistrate conducted
an examination to determine whether a crime had
been committed. Defendant appeared specially for
the purpose of challenging the jurisdiction of the
recorder's court to conduct an examination on the
ground that Judge Ferguson had no power or juris-
diction to investigate or to take any action seeking
the arrest and prosecution of defendant because if
any crime was committed, it was committed in the
city of Detroit. Defendant's motion to quash the
information for the reasons above stated was denied
by the examining magistrate and he was held for
trial. The cause proceeded to trial and was sub-
mitted to a jury at the close of the people's case.
Defendant did not testify or produce any defense
witnesses. The jury found defendant guilty on all
three counts.

Defendant appeals and contends that a circuit
judge sitting as a one-man grand jury in Wayne
county has no jurisdiction to issue a warrant cover-
ing a crime committed in the city of Detroit; that
original and exclusive jurisdiction of all offenses
committed within the city of Detroit is, by statute,
vested solely in the recorder's court of the city of
Detroit.

It is urged by the prosecuting attorney that proceedings for "discovery" of crime in the Wayne county circuit court do not come within the grant of exclusive jurisdiction to the recorder's court of "prosecutions and proceedings" for crimes committed in the city of Detroit; that the statutes relating to the recorder's court provide that such court is to be governed by general law "so far as the same may apply."

The recorder's court act (3 Comp. Laws 1929, § 16290 *et seq.* [Stat. Ann. § 27.3551 *et seq.*]) provides in part as follows:

"The said recorder's court shall have original and exclusive jurisdiction of all prosecutions and proceedings in behalf of the people of this State, for crimes, misdemeanors, and offenses arising under the laws of this State, and committed within the corporate limits of the city of Detroit, except in cases cognizable by the police court of the city of Detroit, or by the justices of the peace of said city; and shall have power to issue all lawful writs and process, and to do all lawful acts which may be necessary and proper to carry into complete effect the powers and jurisdiction given by this act, and especially to issue all writs and process, and to do all acts which the circuit courts of this State, within their respective jurisdictions, may, in like cases, issue and do by the laws of this State: *Provided,* That this section shall not be construed to prevent the grand jury for the county of Wayne from inquiring into and presenting indictments, as heretofore, for crimes and offenses committed within the limits of said city." (3 Comp. Laws 1929, § 16300 [Stat. Ann. § 27.3561].)

"All indictments for offenses committed within the limits of the city of Detroit, which may be found and presented to the circuit court for the county of

Wayne, by the grand jury of said county, shall be forthwith certified and transmitted by the clerk of said circuit court to said recorder's court, and thereupon said recorder's court shall have as full and complete jurisdiction of said indictments as if the same had been originally presented to said recorder's court, and shall have full power to take all further proceedings thereon." (3 Comp. Laws 1929, § 16301 [Stat. Ann. § 27.3562].)

"In all prosecutions for crimes, misdemeanors, and offenses arising under the laws of this State, said recorder's court shall be governed in the same manner as the circuit courts of the State are, by the general laws thereof, which, so far as the same may apply, are hereby made applicable to said recorder's court, its officers and all proceedings therein, subject to the provisions of this act." (3 Comp. Laws 1929, § 16320 [Stat. Ann. § 27.3581].)

The pertinent portions of the code of criminal procedure (3 Comp. Laws 1929, § 17116 *et seq.* [Stat. Ann. § 28.841 *et seq.*]) provide:

"This act is hereby declared to be remedial in character and as such shall be liberally construed to effectuate the intents and purposes thereof." (3 Comp. Laws 1929, § 17117 [Stat. Ann. § 28.842].)

"The word 'indictment' includes information, presentment, complaint, warrant and any other formal written accusation.     *     *     *

"The word 'indictment,' unless a contrary intention appears, includes any count thereof." (3 Comp. Laws 1929, § 17118 [Stat. Ann. § 28.843].)

"Whenever by reason of the filing of any complaint, which may be upon information and belief, any justice of the peace, police judge or judge of a court of record shall have probable cause to suspect that any crime, offense, misdemeanor or violation

of any city ordinance shall have been committed within his jurisdiction, and that any person may be able to give any material evidence respecting such offense, such justice or judge in his discretion may, and upon the application of the prosecuting attorney, or city attorney in the case of suspected violation of ordinances, shall require such person to attend before him as a witness and answer such questions as such justice or judge may require concerning any violation of law about which he may be questioned; and the proceedings to summon such witness and to compel him to testify shall, as far as possible, be the same as proceedings to summon witnesses and compel their attendance and testimony, and such witnesses shall be entitled to the same compensation as in other criminal proceedings.'' (3 Comp. Laws 1929, § 17217 [Stat. Ann. § 28.943].)

''If upon such inquiry the justice or judge shall be satisfied that any offense has been committed and that there is probable cause to suspect any person or persons to be guilty thereof, he may cause the apprehension of such person or persons by proper process and, upon the return of such process served or executed, the justice or judge shall proceed with the case, matter or proceeding in like manner as upon formal complaint. And if upon such inquiry the justice or judge shall find from the evidence that there is probable cause to believe that any public officer, elective or appointive and subject to removal by law, has been guilty of misfeasance or malfeasance of office or wilful neglect of duty or of any other offense prescribed as a ground of removal, the said justice or judge shall make a written finding setting up the offense so found and shall serve said finding upon the public officer, public board or body having jurisdiction under the law to conduct removal proceedings against said officer. And said finding shall be a sufficient complaint as a basis for removal of said officer and the public officer, public board or public body having

jurisdiction of removal proceedings against said officer shall proceed in the method prescribed by law for a hearing and determination of said charges. And in respect of communicating or divulging any statement made by such witnesses during the course of such inquiry, the justice, judge, prosecuting attorney and other person or persons who may; at the discretion of such justice, be admitted to such inquiry, shall be governed by the provisions of law relative to grand jurors." (3 Comp. Laws 1929, § 17218 [Stat. Ann. § 28.944].)

The proceedings for the discovery of crime are not "prosecutions and proceedings * * * for crimes" within the meaning of the recorder's court jurisdiction statute. The circuit judge conducting the investigation had the authority to cause apprehension of defendant by proper process under the general code of criminal procedure.

In Re Watson, 293 Mich. 263, 269, we said:

"At the outset it is contended that Judge Ferguson is without authority to investigate or proceed, for the reason that the crime in question in the instant case was committed in Detroit, and that the recorder's court has exclusive jurisdiction over crimes committed in that city. However, the judge, as a one-man grand jury, is empowered to investigate gambling in Wayne county by virtue of 3 Comp. Laws 1929, §§ 16300, 17217 (Stat. Ann. §§ 27.3561, 28.943), and may require any person who may be able to give any material evidence respecting such offense to attend as a witness and answer such questions as the judge may require concerning any violation of the law about which he may be questioned."

In Re Hickerson, 301 Mich. 278, we said:

"The statute referred to in the foregoing quotation (In re Watson, 293 Mich. 263), 3 Comp. Laws

1929, § 16300 (Stat. Ann. § 27.3561), giving the recorder's court exclusive jurisdiction of crimes committed in the city of Detroit, reserved to the grand jury of Wayne county authority to investigate crimes in said county, the same as it had prior to the enactment of the statute. Thus it is seen that the situation in the *Watson Case* was parallel to the facts herein, and it was held that the controlling element was the territorial jurisdiction of the court conducting the grand jury, not the limitations upon the court's power to hear and determine criminal cases."

It is urged by defendant that the "inquisition" statutes (3 Comp. Laws 1929, § 17217 *et seq.* [Stat. Ann. § 28.943 *et seq.*]) require that warrants be returnable before the judge or court issuing them.

Under 3 Comp. Laws 1929, § 16301 (Stat. Ann. § 27.3562), it is provided that indictments for offenses committed within the limits of the city of Detroit which may be found and presented to the circuit court by the grand jury shall be certified and transmitted to the recorder's court. The above statute also provides that the recorder's court shall then have full and complete jurisdiction and power to take all further proceedings thereon. It is our conclusion that the exclusiveness of jurisdiction of the recorder's court does not extend to the initiatory step in the institution of proceedings, but merely to matters subsequent thereto connected with bringing an offender to trial; and that the process was properly returnable to the recorder's court for the city of Detroit.

It is urged that the court was in error in permitting the prosecuting attorney to introduce evidence as to acts and statements of third parties, not in the presence or hearing of defendant, upon the

ground that such third parties were conspirators with the defendant.

In addition to the facts hereinbefore stated, there was introduced in evidence testimony that Albert J. O'Connor was vice-president of the Koenig Coal & Supply Company; that his firm was interested in selling materials for the construction project; that O'Connor became acquainted with Lipman before the Detroit housing commission opened its bids on the project and with Smith on the afternoon of the opening of the bids; that on August 20, 1940, O'Connor, Smith, and Lipman met and discussed the housing project; that Smith and Lipman told O'Connor that "it was going to cost a lot of money to get this job," and they asked him "to hold $30,000 for them to have available for them, or to be expended at their request;" that the money was to be used to secure the contract "by getting the contract through the common council;" that O'Connor was given $30,000 which was deposited in a Chicago bank; that O'Connor informed defendant that he (O'Connor) had "that in my possession;" that on August 21, 1940, O'Connor, Smith and Lipman had an interview with defendant and had a discussion about concrete; that on August 27, 1940, O'Connor visited defendant and gave him $1,000 in currency; that on September 3, 1940, O'Connor again saw defendant and discussed the matter of the vote and that night the common council voted five to four in favor of concrete, with defendant voting for concrete; and that on September 18, 1940, O'Connor again saw defendant and paid him $4,000.

O'Connor testified as follows:

"The first time I seen him that day (September 18, 1940) was in his office on Edmund Place, in the city of Detroit. Mr. Ewald said, 'When am I going

to get the balance of my money?' I said, 'How much have you got coming?' He said $4,000. I said I would have to find out about it. I told him who I had to see, that I had to talk to Smith and Lipman about the balance. He said he wanted it that afternoon. I told him I would rather let it go until tomorrow, but he said no, he wanted it this afternoon. I told him then that I would have to see them and go out to the bank at Hamtramck to get it out of the bank, and he said, well you got an hour to do it in.''

O'Connor also testified that after defendant received the money, he said to O'Connor, ''we was mighty lucky to have gotten his vote for $5,000, because Morey Bein had offered him more money.'' There is also testimony that on one occasion after the contract had been signed, defendant said to Harry I. Dingeman, a fellow councilman, ''Well, did you get yours,'' and when Dingeman replied, ''Yes'' and asked defendant, ''Did you,'' defendant ''smiled and said, 'Oh sure.' ''

Over defendant's objection, the trial court admitted in evidence the conversations between O'Connor, Smith and Lipman on the theory that the people had made a *prima facie* showing of a scheme between the above-mentioned persons and defendant to perpetrate an unlawful enterprise. In the case at bar, defendant is charged with accepting a bribe of money under the statute punishing the acceptor of a bribe.

It is urged by the prosecuting attorney that it is permissible to show that plans well laid in advance have led up to the commission of the offense charged; and that these plans are part of the *res gestae* of the crime.

In *People* v. *Pitcher*, 15 Mich. 397, we said:

"The general rule is well settled that, where several persons are engaged in one common unlawful enterprise, whatever is said or done by any one of them in the prosecution of the common enterprise, or while it is still in progress, is evidence against all the parties to it."

See, also, *People* v. *Salsbury,* 134 Mich. 537; *People* v. *Baxter,* 245 Mich. 229; *People* v. *Frye,* 248 Mich. 678; *People* v. *Earl,* 299 Mich. 579.

The evidence produced at the trial of this cause is of such a nature that a jury could find that O'Connor, Smith, Lipman and defendant entered into a conspiracy to obtain a contract by aid of defendant's vote as a member of the common council for concrete construction for the Detroit housing project. Under the rule above enunciated, statements of any of the persons engaged in the common unlawful enterprise could be used as evidence against defendant. There was no error in admitting this evidence at the trial of the cause.

It is also urged that the verdict was against the great weight of the evidence. It is to be noted that defendant did not take the stand in his own behalf or offer any proof whatsoever. There was evidence from which a jury could find that the payment of money to defendant was for corrupt purposes. The only evidence was that tending to establish the guilt of defendant. There was no evidence to weigh against it. It was for the jury to determine whether the evidence admitted was sufficient to establish guilt beyond a reasonable doubt. We find no reason for disturbing its findings.

But it is urged that the court was in error in refusing to charge the jury that corrupt intent on the part of the receiver, rather than the giver, of an alleged bribe was essential to conviction.

On the subject of "intent" the trial court instructed the jury as follows:

"Intent is a necessary element in most crimes and it is necessary in this case. Under the common law, corrupt intent is said to be an intent to do a thing in a corrupt and wicked manner. Now, what is meant by a 'corrupt' manner? There are many definitions of corruptness, but they have reference to different types of crime. However, in this case, I will first give you the request to charge No. 1 of the respondent:

" 'I charge you that there can be no conviction for acceptance of a bribe unless the same be accepted with a corrupt intent, and even though you should find from the evidence that the defendant received some money, nevertheless, you cannot find him guilty unless you believe beyond a reasonable doubt that he received money with an intent at the time of receiving same to allow the receipt of money to influence his vote on the question of masonry and concrete or steel construction, and unless you do find beyond a reasonable doubt that he had such corrupt intent and intended to be influenced in his vote or decision by the receipt of money, then your verdict must be not guilty.'    *    *    *

"I have been asked to charge by the respondent, and do charge as follows: Request to charge No. 18:

" 'This prosecution is brought under section 118 of the Michigan penal code, which makes it a crime for an official to receive money or anything of value with a corrupt intent to permit his judgment to be influenced thereby. Under this section, it is not sufficient that the official may have received money. The law requires that there must be a corrupt intent with respect to the influencing of his official action. If you believe from the testimony before you that the receipt of money by the defendant did not influence his official action and was not received by him with any intention that it would or should

influence his official action, then your verdict must be not guilty.'

"A corrupt act means an act characterized by an intent to gain advantage not consistent with one's official duty and the rights of others. It is also defined to be dishonest, without integrity, or guilty of dishonesty involving liberty, as when one accepts money with the intent and purpose of being influenced into doing something inconsistent with his official duty as a public officer.

"A corrupt intent might exist, for example, in receiving money for a corrupt purpose and with the knowledge of the person receiving same that such action upon his part would be illegal and unlawful. That might be evidence from which corruptness could be determined. But it is an intent, and it must be a corrupt intent.

"Now intent, of course, is something intangible. It is something we cannot see or observe. It is a man's state of mind or his reason or his purpose of doing something. For that reason, you must ordinarily determine intent from an examination of all the surrounding facts and circumstances, and that ordinarily is the way in which intent can be determined in the absence of a direct expression of intent. That is the only criterion by which we can determine intent. So, I say to you, therefore, you may determine intent from an examination of all the surrounding facts and circumstances and under the law, a person is presumed to intend the natural and probable consequences of his own unlawful and voluntary acts. That is a presumption which is not conclusive, but is a presumption which our courts approve,—a presumption of intent from the voluntary doing of something which, if someone knows is illegal, the law may say or the jury may say, therefore, that one is presumed to intend the natural or probable consequences of his act. So, intent may be determined from all of the facts and circumstances.

''The corrupt intent with which one is charged in this information, a corrupt intent under the count of accepting a promise, of course, requires upon his part, the part of the receiver, that the intent must be in the mind of the person who has received the bribe. The state of mind of the person who gives the bribe is not of any consequence. It is the state of mind of the person accused of the crime which is the criterion. If he receives the same voluntarily, knowingly, knowing it is unlawful and done with the purpose of influencing him in any manner in the discharge of his duty in public office, why he comes squarely within this particular section of the statute.

''So, I say the degree of the influence which is wielded upon him is not of any particular consequence so long as you can say that it is received by him with a corrupt intent to be influenced.

''Whether it be an influence to change his vote from one side to the other, or an influence accepted by him with the corrupt intent to remain in the same position with reference to any matter which may be brought before him, any of those things would be evidence which could go to the jury upon the question of corrupt intent, but intent must be established because this is a crime which is commonly called a 'common-law crime' and common-law crimes ordinarily require the proof of intent.''

In our opinion the above charge upon this element of the crime fully covered the subject and amply protected defendant in his rights as a defendant.

We find no error in the trial of the cause and the judgment is affirmed.  .

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.