## HEMANS v. UNITED STATES.
### No. 10397.

Circuit Court of Appeals, Sixth Circuit.
July 28, 1947.
Writ of Certiorari Denied Oct. 20, 1947.
See 68 S.Ct. 100.

O. R. McGuire, of Washington, D. C. (Lula E. Bachman and Willigan G. Comb, both of Detroit, Mich., on the brief), for appellant.

T. P. Thornton, of Detroit, Mich. (Harold D. Beaton, of Washington, D. C., and John C. Lehr and Thompson P. Thornton, both of Detroit, Mich., on the brief), for appellee.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The appellant, Charles F. Hemans, was convicted by jury verdict in the United States District Court for the Eastern District of Michigan and was sentenced to pay a fine of $1,000 and to be imprisoned for four years for violation of Section 408e, Title 18, of the United States Code Annotated. This section provides: "It shall be unlawful for any person to move or travel in interstate or foreign commerce from any State, Territory, or possession of the United States, or the District of Columbia, with intent either (1) to avoid prosecution, or custody or confinement after conviction for murder, kidnapping, burglary, robbery, mayhem, rape, assault with a dangerous weapon, or extortion accompanied by

threats of violence, or attempt to commit any of the foregoing, under the laws of the place from which he flees; or (2) to avoid giving testimony in any criminal proceedings in such place in which the commission of a felony is charged. Any person who violates the provision of this section shall, upon conviction thereof, be punished by a fine of not more than $5,000 or by imprisonment for not longer than five years, or by both such fine and imprisonment. Violations of this section may be prosecuted only in the Federal judicial district in which the original crime was alleged to have been committed or in which the person was held in custody or confinement." May 18, 1934, c. 302, 48 Stat. 782, as amended Aug. 2, 1946, c. 735, 60 Stat. 789.

The indictment upon which the verdict of guilty was found charged that appellant travelled in interstate commerce on or about August 28, 1946, from Ingham County Michigan, in the Eastern District of Michigan, to Washington, D. C., "with intent to avoid giving testimony in a criminal proceeding [State of Michigan v. Simon D. Den Uyl, et al.] then pending in the Circuit Court for the County of Ingham, State of Michigan, wherein the commission of a felony is charged." The indictment charged, further, that, in the criminal proceeding, a preliminary examination had been set to commence on September 10, 1946; and that Hemans "well knew that he was wanted as a witness at the said preliminary examination."

At the outset, a brief exposition of the unique Michigan law providing for a one-man grand jury would seem essential to a clear understanding of this case.

Section 17217 of the Compiled Laws of Michigan for 1929 [Michigan Statutes Annotated, Section 28.943] empowers, within his discretion, any justice of the peace, police judge, or *judge* of a court of record—who upon the filing of any complaint, even upon information and belief, shall have probable cause to suspect that any crime, offense, misdemeanor or violation of a city ordinance shall have been committed within his jurisdiction—to summon any person able to give material evidence respecting such offense and to compel him

to testify "concerning any violation of law about which he may be questioned." The section requires the judge, or justice of the peace, to summon the witness upon the application of the prosecuting attorney, or city attorney; and the proceedings to summon the witness and to compel him to testify shall, as far as possible, be the same as those to summon witnesses and compel their attendance and testimony in other criminal proceedings.

The ensuing section of the Compiled Laws for 1929, No. 17218 [Michigan Statutes Annotated, section 28.944] provides in its first sentence: "If upon such inquiry the justice or judge shall be satisfied that any offense has been committed and that there is probable cause to suspect any person or persons to be guilty thereof, he may cause the apprehension of such person or persons by proper process and, upon the return of such process served or executed, the justice or judge shall proceed with the case, matter or proceeding in like manner as upon formal complaint."

The record discloses that Judge Louis E. Coash, a Circuit Judge for Ingham County, took over the duties of one-man grand jury for that county around October 1, 1945, at which time there was pending before his predecessor, Judge Carr, an investigation relating to certain banking legislation. Judge Coash testified that matters pertaining to the particular banking legislation were presented to him as grand juror; and that Hemans appeared before him as a witness several times, being granted immunity by him as one-man grand jury. A grand jury subpoena was issued and served on Hemans, on April 25, 1946, directing him to appear before Judge Coash as a one-man grand jury "from day to day, and at such other times as the Court may order," to testify in a certain cause "entitled in the matter of the complaint of Herbert J. Rushton, Attorney General for the State of Michigan, for a judicial investigation concerning certain criminal offenses."

On July 20, 1946, Judge Coash, describing himself as "Circuit Judge acting under Sections 17217 and 17218 Compiled Laws of the State of Michigan for the year 1929 and acts amendatory thereto," signed and

issued a warrant from the Circuit Court of Ingham County, directed to the Sheriff of that county, any member of the Michigan State Police, and to all police officers in Michigan. This warrant recited that there appeared probable cause to suspect that between January 1, 1941, and March 1, 1944, twenty-eight named individuals, including appellant, unlawfully conspired among themselves and with other unknown persons to obstruct the due course of legislation and wilfully and corruptly to affect and influence the action of the Legislature of Michigan and certain members of its Senate and House of Representatives, the Governor of Michigan, and the Assistant Attorney General assigned to act as his legal adviser, in the consideration of any action upon certain proposed and pending legislation, namely Senate Bill No. One of the 61st Michigan Legislature, Regular Session of 1941, amending existing laws relating to financial institutions and banking, "and divers other measures and bills then and there pending in and before said Legislature, the Senate, and the House of Representatives and Governor of the State of Michigan, and which by law might be brought before the said Assistant Attorney General in his public capacity."

The warrant charged probable cause to suspect the named conspirators of offering, tendering, promising, giving and receiving bribes, money and other things of value among themselves and by the unlawful, corrupt and felonious, employment of Assistant Attorney General Byron L. Ballard, as attorney and agent for themselves and for the Michigan National Bank, to aid and assist in defeating the proposed banking legislation by representations, opinions, statements and arguments unfavorable thereto, to the Michigan Legislature, its committees and members, and to the Governor of the state.

The warrant specified by name eight of the conspirators as members of the State Senate, thirteen as members of the State House of Representatives, one as the Assistant Attorney General assigned as legal advisor to the Governor, and seven, including appellant Hemans and the Assistant Attorney General, as givers or promisers of bribes to members of the Senate and House of Representatives of Michigan for the unlawful purpose of influencing their adverse action upon the proposed legislation.

In conclusion, the warrant charged that each and all of the named conspirators "did corruptly, dishonestly, fraudulently, illegally, and feloniously engage and participate in said conspiracy and confederate as aforesaid in violation of the public interest of the people of the State of Michigan, to the jeopardy of the public peace, safety, dignity, and welfare of said State, and the people thereof." The warrant ordered the arrest of twenty-four of the twenty-eight named conspirators. Appellant Hemans was one of the four conspirators not ordered to be arrested.

Judge Coash testified that at all times Hemans had stated that "he would not testify unless he had to," but that he would always add: "If I have to, boys, I will be there, with all the gestures and grease paint." The Judge had, on July 17, 1946, granted him immunity from prosecution. The judicial witness stated that he had not told Hemans that if he did not appear and testify before Circuit Judge O'Hara, who had been assigned to conduct the preliminary examination to ascertain whether there was probable cause to hold the defendants for trial, Hemans' immunity would be revoked.

The preliminary examination had been set originally for August 1, 1946, but was twice continued and was begun on September 10, 1946. Admittedly, appellant was under a continuing subpoena as a witness before the one-man grand jury (Judge Coash), but was not served with a subpoena to appear as a witness before Circuit Judge O'Hara, sitting as examining magistrate. He could not be subpoenaed, because he was not within the jurisdiction of the court.

Although appellant did not testify at his trial, he made an effort, through his attorney's cross-examination of the Government's witnesses, to prove that his motive in leaving Michigan was to put through his resignation from the United States Army, in which he held a commission as Major. The jury was fully justified from the evidence in not believing that this was

his motive. On August 20, 1946, Hemans went to the office of Colonel Rhu Taylor, Judge Advocate, U. S. A., in Chicago, and stated that he desired to submit his resignation. At the time, the status of Hemans was inactive. The Judge Advocate found from his files that a Board proceeding was pending against appellant, who was informed that this fact would have to be recited should his resignation be submitted through Headquarters. Hemans responded that he did not desire to submit a resignation that way; that he was "going on to Washington, anyway," and would contact "Judge Patterson" [meaning the Secretary of War] concerning his resignation. Appellant was aware that it was not necessary for him to go to Washington in connection with his proposed resignation, but that it could have been presented and duly acted upon through the regular channels. Colonel Taylor's testimony established this fact. It is apparent from the record that appellant was eager to resign from the Army, so that he could not be ordered back to Michigan.

Richard B. Foster, special prosecutor for the Ingham County Grand Jury, testified that he and Charles Cummins, assistant prosecutor, went from Lansing, Michigan, to Washington, D. C., and after some difficulty located Hemans at the Ambassador Hotel. The Michigan officials informed him that they had flown to Washington, had an extra seat in the plane, and wanted him to return with them to Lansing to testify at the hearing to be held a few days later. Hemans told them that he was "not going back." He said, according to the witness: "I am clear of the Army now, and they can't send me back." He gave as his reasons that he had previously testified in other cases, that he had been abused and ridiculed for doing so, and was not going back to testify against his friends. Hemans told them further that, having become "rather miserable" about his previous testimony, he had one day carried a .32 revolver and a bottle of whiskey into the woods without definitely deciding what he would do. His wife had found him and, after a discussion of the situation with her, he had decided to fly to the upper peninsula of Michigan to consult an attorney, Seymour Person. He had asked that attorney whether the State of Michigan could revoke the immunity granted him and make him a defendant, and whether the State could compel his removal from the District of Columbia. His attorney had assured him that his immunity could not be revoked, and that he could not be removed.

The witness, Foster, testified further that, before leaving Michigan, appellant had repeatedly declared that he did not intend to testify against his friends, unless compelled to do so; but that, when interviewed in Washington, Hemans had changed his position and definitely declared that he did not intend to return and be a witness at the hearing. After returning to Michigan from Washington, the prosecuting attorney telephoned Hemans on the day before the hearing, urging him to change his mind and return to Michigan. Appellant again stated positively that he "wasn't coming back to Michigan," to which the prosecuting attorney replied: "Well, if you don't come back voluntarily, we will have to bring you back." Hemans responded: "All right, go ahead." The testimony of the attorney that appellant stated in Washington that he would not return to Michigan as a witness and appear at the preliminary examination on September 10th was corroborated by Assistant Prosecuting Attorney Cummins.

From the evidence in the case, the jury was well warranted in believing that, in leaving Michigan, Hemans left with the deliberate intention to avoid testifying in the criminal proceeding then pending in the Circuit Court for Ingham County.

■ (1) Appellant contends that the trial court committed reversible error in instructing the jury that the criminal proceeding described in the indictment charged the commission of a felony within the purview of Title 18, section 408e (2), United States Code Annotated, and in refusing a special instruction to the contrary, requested by appellant. The portion of the charge of which appellant complains reads as follows: "You must also find, as another element in this offense, and be satisfied beyond a reasonable doubt, that there was a criminal proceeding pending in the State of Michigan, in which the commission

of a felony was charged, and that the defendant well knew that he was wanted as a witness therein. On that point it becomes my duty to charge you, and I do charge you, that on August 25, 1946, there was a criminal proceeding pending in the State of Michigan, which proceeding meets the description of the one described in the indictment, and I charge you further that in such proceeding the commission of a felony is charged."

It was, of course, the function of the judge to charge the jury as to whether or not the criminal proceeding pending in Michigan charged a felony within the meaning of section 408e of Title 18 United States Code Annotated. The interpretation of the federal statute in its applicability to the state-court proceeding was a question of law for the court and not an issue of fact for the jury. In our judgment, the court charged the jury correctly.

■ By statute, it is a felony in Michigan to give or offer a bribe to a public officer with intent to influence his official action. Comp.Laws Supp.1940, § 17115-117, Michigan Statutes Annotated, section 28.-312. The statute was enacted "to preserve the integrity of official action in cases where the right of an official to vote, or to decide by his opinion, or exercise his judgment in any manner upon any question, cause or proceeding, is given his office by law." People v. Romanski, 213 Mich. 636, 640, 182 N.W. 121, 122. The statute undoubtedly applies to bribery, or attempted bribery, of a member of the legislature.

It has also been made a felony by Michigan statute for any executive, legislative, or judicial officer to accept a bribe. Comp. Laws Supp.1940, § 17115-118, Michigan Statutes Annotated, section 28.313. The Michigan Supreme Court has held that bribery is not a joint offense of the giver and receiver, inasmuch as the two statutes create separate offenses, defined in separate paragraphs with separate penalties imposed, "personal, not joint, corrupt intent" being an element of each offense. People v. Frye, 248 Mich. 678, 682, 227 N.W. 748, 749.

There is no Michigan statute covering conspiracy generally; nor is there any Michigan statute denouncing a conspiracy

to bribe public officials. Before enactment of the statute to which we shall presently refer, the Supreme Court of Michigan said: "We look to the common law for definitions and principles in our criminal jurisprudence, but, unless the statute provides a penalty, acts criminal at the common law are not crimes in this state." In re Lambrecht, 137 Mich. 450, 454, 100 N.W. 606, 608.

In affirming convictions for conspiracy, the Supreme Court of Michigan said, in the later case of People v. Tenerowicz, 266 Mich. 276, 283, 253 N.W. 296, 299: "Conspiracy to commit a felony constitutes an indictable offense at common law and may be prosecuted as such in this jurisdiction." The court declared further that there are many authorities that a common law conspiracy is constituted "if the acts contemplated are corrupt, dishonest, fraudulent or immoral, and in that sense illegal or dangerous to the public interest."

■ That the Michigan proceeding involved in the instant case charged the commission of a felony under Michigan law is made plain by Comp.Laws Supp. 1940, § 17115-505, section 28.773 of Michigan Statutes Annotated, which provides: "Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by imprisonment in the state prison not more than five [5] years or by a fine of not more than two thousand five hundred [2,500] dollars." Mr. Justice Butzel, writing the unanimous opinion of the Supreme Court of Michigan in People v. Causley, 299 Mich. 340, 348, 300 N.W. 111, 115, used this unequivocal language: "There can be no doubt that until 1927 such common-law offenses [that is, conspiracies of the character charged here] were punishable as misdemeanors (Rev.Stat. 1846, chap. 161 § 22) *nor that, since 1927, they have been felonies* (Act No. 175, chap. 9, § 15 Pub.Acts 1927 [3 Comp.Laws 1929, § 17343]; Act No. 328, § 505, Pub.Acts 1931). * * *. It is within the power of the legislature to designate the grade and prescribe the punishment of offenses." [Ital-

ics supplied.] See also People v. Norwood, 312 Mich. 266, 271, 272, 20 N.W.2d 185.

Appellant places much emphasis upon the opinion of the Third Circuit Court of Appeals in United States v. Brandenburg, 144 F.2d 656, 661, 154 A.L.R. 1160. There, a defendant who concealed knowledge of another's flight from North Carolina to escape prosecution for burglary with explosives, which flight was construed not to be an offense within the purview of the Fugitive Felon Act because the prosecution was for an offense unknown to the common law, was held to be not guilty of misprision of felony under section 146 of the Criminal Code, R.S. 5390, 18 U.S.C.A. § 251. Here, the crime of conspiracy was an offense known to the common law and, as has been shown, is in consequence of the Michigan statute a felony in that state. It is worthy of note that Judge Biggs declared the general purpose of the Fugitive Felon Act to be to "aid the States in preventing violators of state laws from avoiding prosecutions by the States." The authority would seem not to support the inferences which appellant's attorneys seek to draw.

We fail to see how appellant derives any comfort from Jerome v. United States, 318 U.S. 101, 63 S.Ct. 483, 87 L.Ed 640, where the Supreme Court held that, in section 2 of the Federal Bank Robbery Act, 48 Stat. 783, 50 Stat. 749, 12 U.S.C.A. § 588b, the word "felony" embraces only offenses which are felonies under federal law and affect banks protected by the Act. The opinion of Mr. Justice Douglas pointed out that sometimes Acts of Congress make the application of a federal statute dependent upon state law, but that when Congress has decided to incorporate state laws in federal penal statutes it has done so by specific reference or adoption. In the statute with which we are concerned, Congress in explicit language has condemned as criminal the travel of any person in interstate commerce "to avoid giving testimony in any criminal proceedings *in such place in which the commission of a felony is charged.*" [Italics supplied.] This language obviously points to the application of state law in the case at bar.

■ (2) Appellant stresses an opinion of a member of this court, written when

United States District Judge, in United States v. Hagan, D.C., W.D.Ky., 27 F.Supp. 814, wherein the court sustained a demurrer to an indictment which charged the defendant with conspiring with two persons to conceal and harbor them so as to prevent their arrest as fugitives from justice. Judge Miller declared it to appear "well settled that where the substantive offense requires concert of action or plurality of agents the parties committing the offense cannot be indicted for a conspiracy to commit the offense." United States v. Dietrich, C.C., 126 F. 664; United States v. New York Central & H. R. R. Co., C.C., 146 F. 298; and United States v. Sager, 2 Cir., 49 F.2d 725, were cited. Judge Miller added that the rule has also been recognized, although not applied, in the opinions of the Supreme Court in the following cases: United States v. Holte, 236 U.S. 140, 35 S.Ct. 271, 59 L.Ed. 504, L.R.A.1915D, 281; United States v. Katz, 271 U.S. 354, 46 S. Ct. 513, 70 L.Ed. 986; Gebardi v. United States, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206, 84 A.L.R. 370. The opinion wisely cautioned: "Whether or not the rule is applicable to any particular case seems to depend upon the exact facts of the case in question."

It is important to observe that in the instant case the warrant charges that the twenty-eight conspirators, including appellant, combined and confederated wilfully, unlawfully and corruptly to affect and influence the action of the Legislature of Michigan, the Assistant Attorney General of that state assigned to act as the Governor's legal advisor, and the Governor, in their consideration and action upon proposed legislative measures. Bribery was only a part of the scheme concocted by the conspirators to defeat the proposed legislation. We think, therefore, that the case falls within the principles applied in United States v. Glasser, 7 Cir., 116 F.2d 690, 696; and United States v. Manton, 2 Cir., 107 F.2d 834, 839.

In the Manton case, supra, in upholding the validity of the indictment and affirming the conviction of the defendant, Mr. Justice Sutherland asserted that the indictment charged "a conspiracy to obstruct justice and defraud the United States, the scheme

of resorting to bribery being averred only to be a way of consummating a conspiracy and which, like the use of a gun to effect a conspiracy to murder, is purely ancillary to the substantive offense."

In the Glasser case, supra [116 F.2d 696], Judge Kerner said: "Appellants also complain that the indictment is defective because it alleges a case where concerted action is necessary, and that in such a case, conspiracy will not lie, and they cite a line of cases [United States v. Hagan, supra; Gebardi v. United States, supra; United States v. Sager, supra; United States v. New York C. & H. R. R. Co., supra; and United States v. Dietrich, supra] where that principle has been upheld. These cases are not in point for the reason stated in United States v. Manton. supra. * * * So also in our case the indictment charges a conspiracy to defraud the United States of and concerning its governmental function to be honestly and faithfully represented in the courts of the United States by an Assistant United States Attorney, to prosecute delinquents for crimes, free from corruption, dishonesty and improper influence."

Mr. Justice Holmes made the following observation in United States v. Holte, 236 U.S. 140, 145, 35 S.Ct. 271, 272, 59 L.Ed. 504, L.R.A.1915D, 281: "But a conspiracy with an officer or employe of the government or any other for an offense that only he could commit has been held for many years to fall within the conspiracy section, now § 37 of the Penal Code." This language was quoted by Judge Evans in an opinion holding that a conspiracy may exist between one not an officer and the officer to commit the crime of bribery, which the officer alone could not commit. Ex parte O'Leary, 7 Cir., 53 F.2d 956, 957. The parallelism in principle between the O'Leary case and that before us will appear from a reading of the opinion, and also of the later per curiam opinion in Ex parte O'Leary, 7 Cir., 56 F.2d 515. There was no departure in Gebardi v. United States, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206, 84 A.L.R. 370, from the reasoning of Mr. Justice Holmes in the Holte case, supra.

In People v. McGarry, 136 Mich. 316, 326, 99 N.W. 147, the Supreme Court of Michigan affirmed the conviction of the defendant for bribing a city attorney and held that it was competent to prove a conspiracy between the defendant and others corruptly to obtain municipal action by bribing a public official. See also People v. Salsbury, 134 Mich. 537, 96 N.W. 936.

In another Michigan case affirming a conviction for bribery, the State Supreme Court held admissible evidence of a conspiracy between defendant and others to obtain a contract for concrete construction for a Detroit housing project by the aid of the defendant's vote as a member of the City Council. People v. Ewald, 302 Mich. 31, 42, 43, 4 N.W.2d 456. These cases would indicate that the Supreme Court of Michigan considered that charges of conspiracy could be levelled against those corrupting public officials by bribery.

(3) Appellant insists that his motion for a judgment of acquittal should have been granted by the trial court for the alleged reason that "there was no criminal proceeding pending in the Circuit Court for Ingham County or charged in the indictment." His argument is that proceedings before a one-man grand jury and before an examining magistrate in Michigan are not "prosecutions or proceedings for crimes."

The pertinent Michigan statutes have been set forth in the early part of this opinion. The function of the one-man grand jury as constituted in Michigan is to determine whether there is probable cause to suspect that any crime, offense, misdemeanor, or violation of a city ordinance has been committed within the jurisdiction of the judge or justice acting as a one-man grand jury. That official is vested with power to subpoena witnesses, compel their attendance and take their testimony, and to punish for contempt. When the inquiry satisfies the judge or justice that any offense has been committed and that there is probable cause to suspect any person or persons as guilty of such offense, he may cause the apprehension of such person, or persons, and proceed with "the case, matter or proceeding in like manner as upon formal complaint."

This was the procedure followed by Circuit Judge Coash, who complied with

the statute and issued the warrant which has been heretofore described. As we have stated, this warrant, in our opinion, charged the commission of a felony by the twenty-eight individuals named in it. Judge Coash, however, having granted immunity to appellant, did not order him arrested.

We think the position of appellant, that there was no criminal proceeding pending in the Circuit Court of Ingham County, is not buttressed by the authorities which he cites. People v. Ewald, 302 Mich. 31, 4 N.W.2d 456, affirmed the conviction of the defendant in the recorder's court in Detroit for bribery in violation of Michigan Statutes Annotated, sec. 28.313. In the course of rendering its opinion, the court merely said at page 39 of 302 Mich., at page 459 of 4 N.W.2d: "The proceedings for the discovery of crime are not 'prosecutions and proceedings * * * for crimes' within the meaning of the recorder's court jurisdiction statute. The circuit judge conducting the investigation had the authority to cause apprehension of defendant by proper process under the general code of criminal procedure." Earlier language of the court was quoted from In re Watson, 293 Mich. 263, 269, 291 N.W. 652: "At the outset it is contended that Judge Ferguson is without authority to investigate or proceed, for the reason that the crime in question in the instant case was committed in Detroit, and that the recorder's court has exclusive jurisdiction over crimes committed in that city. However, the judge, as a one-man grand jury, is empowered to investigate gambling in Wayne County by virtue of 3 Comp.Laws 1929, §§ 16300, 17217 (Stat.Ann. §§ 27.3561, 28.943), and may require any person who may be able to give any material evidence respecting such offense to attend as a witness and answer such questions as the judge may require concerning any violation of the law about which he may be questioned."

We find nothing whatever in People v. Ewald, supra; in People v. Robinson, 306 Mich. 167, 10 N.W.2d 817; or in In re Slattery, 310 Mich. 458, 479, 17 N.W.2d 251, to indicate that the grand jury investigation and the hearing before the examining magistrate upon the warrant issued by the one-man grand jury was not a criminal proceeding within the meaning of the federal statute which Hemans violated. It would be illogical to assume that Congress, in enacting a statute to aid the forty-eight states of the Union in enforcing their respective state laws, would use the words "criminal proceeding" in so restricted a sense as to permit a fugitive from state justice, or a fugitive witness, to go from one state to another to avoid giving testimony before a grand jury or an examining magistrate, where criminal charges had been formally made.

The expressions of the Supreme Court in Cobbledick v. United States, 309 U.S. 323, 327, 60 S.Ct. 540, 542, 84 L.Ed. 783, would seem to put the matter at rest: "The Constitution itself makes the grand jury a part of the judicial process. It must initiate prosecution for the most important federal crimes. It does so under general instructions from the court to which it is attached and to which, from time to time, it reports its findings. The proceeding before a grand jury constitutes 'a judicial inquiry,' Hale v. Henkel, 201 U.S. 43, 66, 26 S.Ct. 370, 375, 50 L.Ed. 652, of the most ancient lineage. See Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558. The duration of its life, frequently short, is limited by statute. *It is no less important to safeguard against undue interruption the inquiry instituted by a grand jury than to protect from delay the progress of the trial after an indictment has been found. Opportunity for obstructing the 'orderly progress' of investigation should no more be encouraged in one case than in the other."* [Italics supplied.]

The Supreme Court of Michigan quoted the above language and stated, in reference to the "one-man grand jury," that the statutes of Michigan serve the same purpose as the constitutional provisions in regard to grand juries in other jurisdictions; that they do not impose nonjudicial duties upon the judiciary; and are in strict conformity with the State Constitution. In re Slattery, 1945, 310 Mich. 458, 465, 467, 17 N.W.2d 251, 255. After reviewing the earlier cases, Judge Butzel stated unequivocally: "So that there may be no further question, we

hold that the judge conducting a one man grand jury proceeding is acting in a judicial capacity."

In Beal v. Missouri Pac. R. Co., 312 U.S. 45, 50, 61 S.Ct. 418, 85 L.Ed. 577, it was asserted that state courts are the final arbiters of the meaning and appropriate application of state statutes to criminal violations thereof, subject only to review by the Supreme Court of the United States if such construction or application is appropriately challenged on constitutional grounds.

(4) The appellant argues that even if there were pending in the Michigan courts a "criminal proceeding", he was not lawfully convicted for avoiding testimony therein, inasmuch as he could not be required to incriminate himself. He denies that he was granted immunity; and says that, even if he had been, the grant has been violated by the State of Michigan. He makes, through his attorneys, a violent and, on this record, an unjustifiable attack upon Judge Coash.

Judge Coash testified positively that he granted immunity to Hemans, but that the order of immunity, dated July 17, 1946, was not placed in the Circuit Court Journal until September 10, 1946, although it was filed in the Clerk's office on July 17, 1946; that the order was immediately returned to his office and kept in his file cabinet under lock and key until recorded in the Circuit Court Journal on September 10, 1946; that he thus had the order continuously in his possession from July 17 to September 10; that the original order granting immunity did not state the answers of Hemans, so, on September 20, a corrected order was filed "in which the answers were stated to the questions of immunity"; and that the corrected order of September 20 incorporated the original order. He is positive that the time when Hemans was granted immunity was in the grand jury session of July 17, 1946. The warrant, which has been discussed, was issued on July 20, 1946, three days after Judge Coash says he granted appellant immunity.

The language in the main brief of attorneys for appellant that "it taxes the credulity of man to believe the explanation of Judge Coash" concerning the immunity order, and that "this Grand Juror, himself a Judge, chose to disobey and disregard the terms of said Michigan statute" [Comp. Laws Mich.1929, § 17220, section 28.946, Michigan Statutes Annotated], is unwarranted and offensive overstatement which this court rebukes. The insult to the judge is emphasized by the contemptuous manner in which, in their reply brief, appellants repeatedly refer to him as "Coash," deliberately ignoring his official title, and making, among other slurring comments: "We do not say that the few papers found were planted there by Coash or the state prosecuting attorney. All we say is that they readily could have been." It is highly improper, also, for the offending attorneys to adjure this court "to weigh most carefully the testimony of the Clerk of the Circuit Court of Ingham County and the cited statutes of the State of Michigan before accepting the testimony of one of these one-man grand jurors concerning a witness who had the intestinal fortitude to talk to him as he admitted appellant had done."

The record shows that Judge Coash undoubtedly granted immunity to appellant in such manner that the latter could never be prosecuted for any criminal acts of his own which he may have admitted in his testimony before the grand jury. Where immunity accorded a witness is sufficient, he is required to answer even though his answers are self-incriminating. In re Watson, 293 Mich. 263, 291 N.W. 652. See also People v. Norwood, 312 Mich. 266, 274, 20 N.W.2d 185.

(5) We need not pause long to reject the invalid argument of appellant that the federal statute which he violated inflicts cruel and unusual punishment in contravention of the Eighth Amendment to the Constitution of the United States. Historically viewed, the Eighth Amendment was adopted to prevent inhuman, barbarous, or torturous punishment, though long-term imprisonment could be so disproportionate to the offense as to fall within the inhibition. We think it clear that the statutory provision for a maximum term of five years' imprisonment for fleeing a state to

238.

avoid giving testimony in a felony case, and thus obstructing justice, cannot reasonably be classified as cruel and unusual punishment within a constitutional or any other sense.

Attorneys for appellant assert that the sentence imposed upon him is a "vindictive sentence." They charge that the United States District Judge "spoke as if personally outraged at the failure of appellant to testify in the state court," and that his remarks in imposing sentence and in denying bond reveal that "the appeal to prejudice had some influence on him and that the very severe sentence imposed resulted in part because the appellant had refused to testify in the state case after he had been brought back to Michigan under this indictment." These strictures upon Judge Levin are wholly unjustified. The entire record shows conclusively that he presided fairly and impartially throughout the trial; displayed no emotion or feeling; and that he was calm, dignified and just when imposing reasonable punishment for a grave infraction of a federal criminal statute. Even if our own views were —which they are not—that the sentence imposed by Judge Levin was too severe, it would not fall within our province to set aside or correct the sentence, or to grant a new trial of the case. As early as Ex parte Watkins, 7 Pet. 568, 32 U.S. 568, 574, 8 L.Ed. 786, Mr. Justice Story said: "The eighth amendment is addressed to courts of the United States exercising criminal jurisdiction, and is doubtless mandatory to them and a limitation upon their discretion. But this court has no appellate jurisdiction to revise the sentences of inferior courts in criminal cases; and cannot, even if the excess of the fine were apparent on the record, reverse the sentence."

This court repeats what it said in Bogy v. United States, 6 Cir., 96 F.2d 734, 741: "Appellants also attack the severity of the sentences imposed. The sentences are within the statutory limit, and hence we do not review the discretion vested in and exercised by the trial court in imposing them." See also Schultz v. Zerbst, 10 Cir., 73 F.2d 668, 670; Moore v. Aderhold, Warden, 10 Cir., 108 F.2d 729, 732; Jackson v. United States, 3 Cir., 72 F.2d 764, 765; Tincher v. United States, 4 Cir., 11 F.2d 18, 21; Bailey v. United States, 7 Cir., 284 F. 126, 127; Jackson v. United States, 9 Cir., 102 F. 473, 487.

(6) Appellant attacks the constitutionality of the section of the United States Criminal Code which he violated Title 18, U.S.C.A. section 408e. He says that the power of the United States Government under the commerce clause of the constitution over persons is limited by the privileges and immunities clause and the extradition clause of article IV of the constitution. He urges that the entire statute is an obvious attempt to supplant the extradition process provided for in article IV, section 2, of the Constitution of the United States and the statutes enacted pursuant thereto. He argues that a citizen has a constitutional right to pass freely from one state to another; and that there is no constitutional authority "to make it a crime for a person to move in interstate travel to avoid testifying in a criminal proceeding pending in a State Court in which he is named as a co-defendant", there being "no subject of commerce involved." He charges that the federal statute is so indefinite and uncertain as to conflict with the due process clause of the Fifth Amendment to the Constitution of the United States. He asserts further that the statute in question, as interpreted by the trial court, "constitutes delegation of legislative power of the United States to make Federal crimes to the States, their subdivisions, and to their law enforcement officers in violation of the Constitution of the United States"; and that "among other consequences of holding this Federal statute to be constitutional would be the Balkanization of the 48 States, territories and possessions."

Appellant's attorneys top off an unsound argument with the following criticism of United States Senators, improperly made in a brief to the United States Circuit Court of Appeals: "The appellant contends in this case that the courts should refuse to give effect to Title 18, section 408 e (2), U.S.Code Annotated, which became law through the stubbornness of two Sen-

ators [Senator Vandenburg of Michigan and Senator Copeland of New York], neither of whom was a lawyer."

The general purpose of the Fugitive Felon Act was to aid the enforcement of state laws and to reach and bring to the bar of justice a roving class of criminals. As is well known, under the interstate commerce clause of the federal constitution Congress has been able lawfully to provide punishment for the theft of goods shipped in interstate commerce; for the transportation in interstate commerce of stolen automobiles [Dyer Act, 18 U.S.C.A. § 408], women for the purposes of prostitution [Mann Act, 18 U.S.C.A. § 397 et seq.], stolen property, money and securities; and for numerous other criminal acts.

In upholding the constitutionality of the Mann Act, the Supreme Court held that, although women are not articles of merchandise, their transportation in interstate commerce for immoral purposes could be prohibited by an Act of Congress. Hoke v. United States, 227 U.S. 308, 320, 323, 33 S.Ct. 281, 283, 57 L.Ed. 523, 43 L.R.A., N.S., 906, Ann.Cas.1913E, 905. It was pointed out that the power to regulate interstate commerce is direct; that there is no word of limitation in the interstate commerce clause; and that "its broad and universal scope has been so often declared as to make repetition unnecessary." In Brooks v. United States, 267 U.S. 432, 436, 437, 45 S.Ct. 345, 346, 69 L.Ed. 699, 37 A.L.R. 1407, wherein the Dyer Act was held to be constitutional, Chief Justice Taft said: "Congress can certainly regulate interstate commerce to the extent of forbidding and punishing the use of such commerce as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin. In doing this it is merely exercising the police power, for the benefit of the public, within the field of interstate commerce." Numerous lawful exercises of the power were given as illustrations.

Judge Hamilton, at the time of his death a member of this court, was required when United States District Judge for the Western District of Kentucky to pass upon the constitutionality of section 408e, Title 18, of the United States Code Annotated. United States v. Miller, D.C., 17 F.Supp. 65, 67, 68. The able jurist held that the statute is not void for indefiniteness or uncertainty; that while the federal constitution safeguards the right of a citizen to pass from one state to another as among his privileges and immunities, Congress may in the exercise of its plenary power to protect interstate and foreign commerce declare punishable any offense which interferes with, obstructs, or prevents such commerce, or makes it a vehicle of crime. He pointed out that, in order "to aid the states in the apprehension of the guilty and make certain, swift, and sure the punishment of those who commit crimes against the states", Congress may make the use of interstate commerce by a fleeing criminal a crime. He commented: "If such power be not lodged in the Congress, then the unity of our people to deal with crime is destroyed and the states crippled in punishing those who violate their laws and flee to another state." He said further that the act in question does not interfere with the right of extradition of a criminal from a state to which he has fled to the state where his crime was committed. We concur in the reasoning of our respected departed colleague. The rationale of his opinion applies with equal logic to one who travels in interstate commerce to avoid giving testimony in the state from which he flees as to a fugitive from justice.

The constitutionality of the statute in controversy was also upheld in Simmons v. Zerbst, D.C.,N.D.Ga., 18 F.Supp. 929. In Barrow v. Owen, 5 Cir., 89 F.2d 476, 478, the district judge had inquired into and determined that the Fugitive Felon Act was constitutional. The Court of Appeals said that the question was not properly before the district judge, but stated in the succeeding paragraph of its opinion: "The statute is certainly not void on its face. Indeed, so viewed, it appears to be a reasonable exercise of federal authority in aid of the enforcement of state laws." In Williams v. United States, 5 Cir., 148 F.2d 923, and in Jackson v. United States, 8 Cir., 131 F.2d 606, convictions for violation of section 408e of Title 18 United States Code Annotated, were upheld and the constitution-

ality of the Act was not even challenged so far as the opinions reveal.

■■■■ (7) Turning now to a discussion of the principal authorities upon which appellant relies in his attack upon the constitutionality of the Act, we find that he is not supported by United States v. Wheeler, 254 U.S. 281, 41 S.Ct. 133, 136, 65 L.Ed. 270. The concluding paragraph of Chief Justice White's opinion makes it plain that, regardless of his expressions concerning the right of citizens to have free ingress and egress among the states, nothing said "must be considered as implying a want of power in the United States to restrain acts which, although involving ingress or egress into or from a State, have for their direct and necessary effect an interference with the performance of duties which it is incumbent upon the United States to discharge." Applying this language to the present situation, it is plain that, if Congress regarded it as a duty to aid the states in bringing back to their local jurisdictions fugitives from justice, or essential witnesses, that power exists.

United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516, 14 A.L.R. 1045, is not in point. There, a section of the Food Control Act, 41 Stat. 297, exacting of any person a fine or imprisonment for making "any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries", was held unconstitutional as setting up no ascertainable standard of guilt. Here, the standard of guilt is made plain: travel in interstate commerce to avoid giving testimony in a criminal proceeding in a place where the commission of a felony is charged. Appellant has been adequately informed of the nature and cause of the accusation made against him. Nor does Screws v. United States, 325 U.S. 91, 101, 102, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495, 162 A.L.R. 1330, support appellant's argument. The entire opinion in that case must be read in the light of the following statement made by the opinion writer: "The Court, indeed, has recognized that the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid. The constitutional vice in such a statute is the essential injustice to the accused of placing him on trial for an offense, the nature of which the statute does not define and hence of which it gives no warning. See United States v. L. Cohen Grocery Co., supra. But where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law." Here, the appellant suffered no lack of warning that fleeing from Michigan to the District of Columbia would violate a federal statute, which made it plain that his travel in interstate commerce to avoid giving testimony in a proceeding pending in the State of Michigan, charging a felony, was an offense against the laws of the United States. He had definite knowledge of the pending proceeding, and cannot be excused if he was unaware of the federal statute. Jerome v. United States, 318 U.S. 101, 104, 106, 63 S.Ct. 483, 87 L.Ed. 640, as previously pointed out, recognizes that Congress, by specific reference or adoption and plain indication of intent, may incorporate state laws into federal penal statutes. Concluding the discussion, we find no constitutional infirmity in section 408e, Title 18, United States Code Annotated.

■■■ In our judgment, no error inheres in any portion of the trial judge's clear and accurate charge, or in his denial of any specific instructions requested by appellant. All correct propositions of law presented in the rejected requests were covered correctly in the general charge. Those propositions not included were either superfluous or incorrect statements of law.

The judgment of conviction and sentence is affirmed.